JAMES QUINN *vs.* HORACE JAMES & others.

Norfolk.    March 17, 1899. — June 30, 1899.

Present: HOLMES, MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Construction of Improvement in Brook Channel by Town — Statute — Notice of Intention to assess Betterment — Evidence.*

The statement, in a notice given to landowners by selectmen, that they intend to assess a portion of the expense of an improvement upon the estates benefited, according to law, is a sufficient declaration that the action of the selectmen is taken under the provisions of law authorizing the assessment of betterments.

At the trial of a petition for a writ of certiorari to quash the proceedings of selectmen in laying out an improved channel for a brook and assessing betterments therefor, evidence that the old channel had been obstructed by persons other than the respondents since the construction of the new channel, is rightly excluded as immaterial.

PETITION, for a writ of certiorari to the selectmen of Brookline.

The petition alleged that the respondents, by an order dated March 18, 1895, laid out a covered brook channel in Brookline, from a point near Chestnut Place in Chestnut Street, through portions of Chestnut and Cypress Streets and other streets and lands named; that the laying out was accepted by a vote of the town on April 11, 1895; that at the time of the laying out and constructing the covered brook channel, a brook across the land of the petitioner was closed, and the stream which flowed through his land was diverted to the present location of the covered brook channel; that by the diversion of the brook from the petitioner's land to its present location, his lands were greatly injured; that on February 23, 1897, the respondents levied a

betterment assessment upon the land of the petitioner, amounting to $400, and delivered their warrant for the collection of the same to the collector of the town; that the petitioner had been advised and believed that the proceedings of the respondents in the laying out and constructing the covered brook channel, and in making the assessment, were unauthorized by law, irregular, and void; and that the assessment was disproportionate, unjust, and illegal, for the following reasons:

First. Because the selectmen had no authority by law to lay out and construct such covered brook channel.

Secondly. Because the order of the selectmen in the laying out of the covered brook channel did not declare the same to be done under the provisions of law authorizing the assessment of betterments.

The prayer of the petition was that a writ of certiorari might issue, commanding the respondents to certify their proceedings relating to the assessment, to the end that the same might be quashed.

The answer and return of the respondents alleged that at a town meeting duly held on April 13, 1887, under an article in the warrant, "To see if the town will accept chapter 99 of the Acts of 1887, entitled 'An Act to authorize the town of Brookline to provide for surface drainage and to improve the brooks and natural streams within the limits of said town,'" it was voted that the act be accepted; that on March 16, 1895, they caused a written notice of their intention to lay out a covered brook channel from a point near Chestnut Place in Chestnut Street in the town, through portions of Chestnut and Cypress Streets and other streets and lands named, and of their intention to assess a portion of the expense thereof upon the estates benefited thereby according to law, to be served upon the owners of the land in which the brook channel was proposed to be laid out, and upon all other persons and parties owning or having any rights in estates that would be benefited by such laying out; that the notice was duly served; that a hearing was had at the time and place fixed for the same in the notice, and several persons interested, among them the petitioner, appeared and took part in the hearing; that afterwards on the same day, namely, on March 18, 1895, the respondents

duly laid out the brook channel under the laws authorizing the assessment of betterments, and duly filed the laying out and the plan accompanying the same in the office of the town clerk; that thereafter, at an adjournment of the annual town meeting held on April 11, 1895, under an appropriate article in the warrant, it was voted " to accept and allow a covered brook channel in parts of Chestnut, Sewall, and High Streets and lands of the town and of private parties, as laid out by the selectmen and reported to the town at this meeting," and to appropriate a certain sum therefor; that thereafter the brook channel was constructed in accordance with the laying out, at an expense named, and after the work of laying out and construction was completed, and within two years after the brook channel was laid out, namely, on February 23, 1897, the respondents passed an order, entitled "Assessments for Betterments on Chestnut Street Brook," assessing the petitioner, among others, the sum of $400; that due notice of such assessment was given to the parties to be charged thereby, and the betterments so assessed were duly committed to the collector of taxes of the town for collection; that the covered brook channel was designed to take and did take the waters of a certain brook in the town having its source above the point near Chestnut Place in Chestnut Street first mentioned in the laying out, which brook originally flowed through the land of the petitioner and the lands of other persons for a distance of about forty-six hundred feet until it discharged into and through a meadow into Muddy River so called, a stream of water discharging into the Charles River; that at the time when the laying out was made the brook discharged into a covered channel at the corner of Chestnut Street and Pond Avenue made at the time when the Muddy River Improvement, a park constructed by the town of Brookline and the city of Boston, was laid out, and the water of the brook was carried through the last mentioned covered channel into the ponds constructed in the park, ultimately finding its way into Muddy River, Charles River, and the sea; that the covered brook channel was intended to and operated to divert the water of the brook from the course in which it had theretofore flowed through the lands of the petitioner and others into the new channel; that by the alteration of the course of the

brook, and by the diversion of the waters thereof from the land of the petitioner, his lands were greatly benefited; that the brook before the laying out was made was shallow, and the channel of the same was insufficient in size to carry away at all times all the water flowing into the brook, so that at times the water backed up in the brook and flooded portions of the lands through which it flowed, and so that cellars of houses built upon the line of the brook were at times flooded with water; that it was necessary, for the purpose of doing away with this state of things and to secure surface drainage, to construct a new channel for the brook to take the waters thereof, and to alter the course and to deepen the channel thereof, all of which things were done under and by the laying out; that the new channel was not designed for use as a sewer, nor was it used for carrying sewage, its sole purpose and use being to afford a new and improved channel for carrying the waters of the brook and providing for surface drainage; that the fact that the new channel for the brook was covered was due in part to the fact that such covered channel was in parts of its course made necessary by the diversion of parts of the brook into the limits of public and private ways of the town, and in part to the fact that an open brook channel is liable to become obstructed and the lands through which it flows to be flooded, which inconveniences are obviated by making a covered channel of proper size and construction; that the covering of the brook channel was not to prevent the owners of lands abutting on the brook from draining surface and ground water from their lands into the new channel, but the new covered channel was laid at such a depth as to admit of the connecting with it of drains to drain off the surface and ground water in the lands of the petitioner and of the other persons owning lands on the line of the improvement, which would, if the improvement had not been made, have flowed into the brook; and that the petitioner and such other persons were at liberty to connect their surface water drains with the covered brook channel at any time upon application to the proper authorities of the town, and upon complying with such reasonable regulations as the town or its officers might have the right to make as to the manner of making the connections, with a view to securing the due preservation and main-

tenance of the covered brook channel and the keeping of the same unobstructed.

Hearing before *Hammond*, J., who reserved the case for the consideration of the full court on the petition, the answer and return of the respondents, and the following facts found by him:

A connection has been made by the selectmen at Cypress Street where the new covered channel crossed the old brook, connecting the old brook channel with the new covered channel, so that when the old channel is unobstructed the petitioner can drain his premises. The petitioner offered to show that the old channel had been obstructed since the construction of the new channel, but by persons other than the parties to this suit. The judge excluded the evidence as immaterial, and the petitioner excepted.

The petitioner did not know that this connection had been made until the day of the hearing. He had not been informed by the selectmen or their agents of the fact of such connection, and had made no inquiry himself to ascertain the fact, because he had been informed by parties other than the town or its officials that no such connection had been made.

The new covered channel was built of a size ranging from thirty-two inches wide by forty inches deep at its lower end, to twenty-four inches wide by thirty inches deep for the section opposite the petitioner's land between Cypress Street and Chestnut Place, was egg shaped, cemented outside and in, and was constructed six feet below the level of the petitioner's premises bordering on Chestnut Street. An under drain of tile drain pipe, ranging from five to eight inches in diameter, was laid, with open joints bedded in gravel, to allow the ground water to flow into the same, and running parallel with the course of the covered channel and beneath the same, and the under drain was laid at the time of the construction of the covered channel, and was connected at intervals by pipes leading into the covered channel above it, to afford an outlet for the water in the under drain into the covered channel when the under drain became surcharged. .

No opening was made in the covered channel opposite the petitioner's land on Chestnut Street to enable him to enter any drains from his premises therein, and no notice was given to him

that he could connect his drains therewith prior to the bringing of the petition.

The covered channel constructed by the respondents is so much larger and deeper than the old channel of the brook, that when the old channel is unobstructed the petitioner can drain his land better than he could before, and in constructing the covered channel the respondents did not enter upon or do any work upon the petitioner's land, and in no way affected his land except by diverting therefrom into the new covered channel the old natural watercourse which theretofore had entered the peti-' tioner's land, and by the connection which the respondents made of the old brook with the new covered channel where the original brook crossed the new covered channel in Cypress Street.

*H. P. Harriman & H. E. Perkins*, for the petitioner.

*C. A. Williams*, for the respondents.

BARKER, J. 1. The contention that the statute did not authorize the method of improving the brook which was adopted by the town authorities is disposed of adversely to the petitioners in *Beals* v. *James*, 173 Mass. 591, in which we have construed St. 1887, c. 99.

2. The statement in the notice given to the petitioner and others that the board intended to assess a portion of the expense of the improvement upon the estates benefited, according to law, was a sufficient declaration that the action of the board was taken under the provisions of law authorizing the assessment of betterments. *Masonic Building Association* v. *Brownell*, 164 Mass. 306.

3. That the old channel had been obstructed by persons other than the respondents since the construction of the new channel was immaterial to the present case, and evidence of such obstruction was rightly excluded.

*Petition denied.*