R. J. DENNY ET AL., Appellants, v. DES MOINES COUNTY ET AL., Appellees.

**Drainage:** ESTABLISHMENT OF DISTRICTS: DETERMINATION BY SUPER-
VISORS: CONCLUSIVENESS: LEGISLATIVE POWER. A determination by the board of supervisors, that the establishment of the drainage district and the making of the contemplated public improvement therein, is not advisable on the ground that such action would not be conducive to the public health, convenience or welfare, or to the public benefit or utility, is discretionary and of a legislative character, which is not reviewable in the courts.

**Inferior tribunals:** LEGISLATIVE AND ADMINISTRATIVE POWER. A tribunal whose powers are purely statutory and not constitutional may be given legislative or administrative as well as judicial functions.

*Appeal from Des Moines District Court.*—HON. W. S. WITHROW, Judge.

FRIDAY, JULY 2, 1909.

THE plaintiffs petitioned the board of supervisors of Des Moines County to establish a drainage district covering certain described land belonging to them and others. An engineer appointed by the board presented his report, recommending the establishment of a drainage district of

twenty-eight thousand acres within the territory of the defendant county. Remonstrances were filed signed by one hundred and fourteen persons, and, proper notices having been served, a hearing was had before the board, which as a result of said hearing, found that the proposed district was not for the public benefit or utility, or conducive to the public health, convenience or welfare, and refused to establish the proposed district. The petitioners appealed from this action of the board to the district court, which held that, while there was evidence introduced by the petitioners tending to show that said improvement would drain agricultural lands, and would be a public utility, and conducive to the public health, convenience and welfare, and that the plan proposed was the only plan by which the agricultural lands within the territory described could be satisfactorily drained, the act of the board in refusing to establish the district was the exercise of legislative functions, and not judicial, and therefore dismissed the appeal for want of jurisdiction in the court to hear the same. From this ruling of the district court the petitioners appeal.—*Affirmed.*

*Seerley & Clark,* for appellants.

*Poor & Poor, Blake & Wilson* and *H. F. Kuhlemeier,* for appellees.

McCLAIN, J.—The proceedings provided by Acts 30th General Assembly, chapter 68, as amended by Acts 32d General Assembly, chapter 94 (Code Supp. 1907, section 1989a1 *et seq.*), so far as involved in the determination of the questions presented in this case, are substantially as follows:

A petition signed by one or more of the landowners whose lands are to be affected by the proposed improvement, accompanied by a bond for the payment of all costs and ex-

penses incurred in the proceedings in case the supervisors do not grant the prayer of the petition, may be filed with the county auditor, describing the proposed drainage district, alleging that the lands so described are subject to overflow, and too wet for cultivation, and that the public benefit or utility, or the public health, convenience, or welfare, will be promoted by draining the same. The board of supervisors of the county, which is expressly authorized to have jurisdiction, power and authority to establish a drainage district, and cause to be constructed ditches or drains therein whenever the establishment of such district and the drainage thereof will be of public utility, or conducive to the public welfare (the drainage of surface waters from agricultural lands being expressly declared to be a public benefit, and conducive to the public health, convenience and welfare), is directed to thereupon appoint an engineer, who shall proceed to examine the lands described, and other lands which would be benefited by the said improvement, or necessarily affected in carrying it out, who shall thereupon survey and locate such drains, etc., as may be practicable and feasible to carry out the purposes of the petition, and which will be of public benefit or utility, or conducive to public health, convenience or welfare, and make return of his proceedings to the county auditor with plats, profiles, etc., and a description of each tract of land within the proposed district, together with the probable cost, and such other views and recommendations as he may deem material. If the engineer recommends the establishment of the drainage district, the board is then to examine his return, and if the plan seems to be expedient, and meets the approval of the board, it shall direct the auditor to cause a notice to be given of the proposed establishment of the district. Before the day set for hearing claims for damages must be filed in the auditor's office. At the hearing on the petition the supervisors shall determine the sufficiency of the petition in form and matter, and if deemed

necessary, they may view the premises, and if "they shall find that such drainage district would not be for the public benefit or utility or conducive to the public health, convenience or welfare, they shall dismiss the proceedings; but if they shall find such improvement conducive to the public health, convenience or welfare, or to the public benefit or utility, and no claims shall have been filed for damages, they may, if deemed advisable, locate and establish the same in accordance with the recommendations of the engineer, or they may refuse to establish the same if they may deem best." If claims have been filed for damages, then the proceedings may be continued for an assessment of damages by appraisers, and the supervisors shall on a further hearing consider the amount of damages awarded by the appraisers in reaching a final determination in regard to establishing such drainage district; and, if in their opinion the cost of construction and the amount of damages is not excessive, and a greater burden than should be properly borne by the land benefited, they shall locate and establish the same. Any party aggrieved may appeal from the finding of the board in establishing, or refusing to establish, the district, or from its finding in the allowance of damages to the district court, which appeal shall be tried in that court as an ordinary proceeding, except that when the appeal is from the order of the board in establishing, or refusing to establish, the district, it shall be tried in equity, and the court shall enter such order as may be proper in the premises. It is then provided that the costs and damages as determined by the board of supervisors, or by the district court on appeal, shall be assessed against the property benefited in proportion to the benefits.

From this general statement of the statutory provisions on the subject it clearly appears that a discretion is vested in the supervisors to determine, first, on evidence presented and on their view of the premises, if deemed necessary, whether the establishment of the drainage dis-

trict would be for the public benefit or utility, or conducive to the public health, convenience or welfare; and, second, if damages are claimed, whether the cost of construction and amount of damages awarded is a greater burden than should be properly borne by the land benefited.

1. Drainage: establishment of districts: determination by supervisors: conclusiveness: legislative power.

If, as to either of these matters submitted to their consideration, the supervisors determine that it is not advisable in their judgment to establish the drainage district and make the proposed improvements, the. costs of which are to be paid by assessments on the lands to be benefited, included within the proposed district, then they are authorized to refuse to establish the district as prayed for in the petition and recommended by the engineer appointed.

In the proceedings instituted by these petitioners the board of supervisors determined that in their judgment the proposed district was not for public benefit, or utility, or conducive to the public health, convenience, or welfare, and dismissed the petition. The petitioners appealed to the district court from this finding, which reached the conclusion that it had no jurisdiction to review such finding, and the question, succinctly presented on this appeal from the action of the district court, is whether the determination of the board was legislative in its character, and therefore one not reviewable in the courts, or whether, on the other hand, the court to which such an appeal is taken may, on the question presented to the board of supervisors for determination, on its judgment and in its discretion substitute itself for the board, and on the hearing of new evidence, if offered in addition to that submitted to the board, establish the district which the board has refused to establish. It may be conceded that the broad provisions relating to appeals authorize an appeal by the petitioners from the action of the board in its judgment and discretion refusing to establish a district and to proceed further in the making of the public improvement contemplated,

and we must therefore determine whether such authority as is contemplated can be vested in a court.

In view of the express provision of our state Constitution that the powers of the government shall be divided into three separate departments, the legislative, the executive, and the judicial, and that no person charged with the exercise of powers properly belonging to one of these departments shall exercise any function appertaining to either of the others, except as in the Constitution expressly directed or permitted (Constitution, article 3, section 1), it must be conceded that, if the authority vested in the board of supervisors is in its nature legislative, and not judicial, then the district court, which is only vested with judicial power (Constitution, article 5, sections 1, 6), can not by statute be authorized to exercise such authority. No doubt a finding by the board of supervisors that the petition is not sufficient in form or matter is judicial, and subject to review on appeal to a court; but, is a finding that the board deems it best, or not advisable, to establish the district and make the public improvement, on the ground that such action would, or would not, be conducive to the public health, convenience, or welfare, or to the public benefit or utility, subject to such review? "Powers, not in themselves judicial, and that are not to be exercised in the discharge of the functions of the judicial department, can not be conferred on courts or judges designated by the Constitution as a part of the judicial department." *State v. Barker,* 116 Iowa, 96.

The courts have frequently experienced difficulty in drawing the division line between the functions of the three departments of government, and a discussion, or even citation, of the many cases in which questions of this kind have been considered would be impracticable. We prefer to confine ourselves strictly to the question whether a court, whose powers are by the Constitution strictly judicial, can be vested by the Legislature with the authority

to determine a question involving legislative discretion; for it must be borne in mind that the appellants are asking the district court to review on an appeal a finding by the supervisors that they do not deem it best to establish the drainage district in question, on the ground that it is not for the public benefit or utility, or conducive to the public health, convenience or welfare. If the statutory appeal, which seems to be authorized in such cases, is a valid exercise of power on the part of the district court in this case, then the drainage district is to be established, if at all, not because the supervisors deem it best, but because it seems best to the district judge. It must be borne in mind, also, that the supervisors are elected to exercise, to some extent at least, a legislative authority, while the district judge is elected to conduct judicial proceedings, and determine judicial questions, and is by the Constitution limited to such functions. The electors may in choosing supervisors exercise their will in selecting such members of the board as shall represent the views of public policy, and have in mind such considerations of public welfare as are agreeable to those voting for them; but the electors choosing a district judge can not, in the nature of things, take into consideration what his views may be as to the decision of judicial questions which may be brought before him. This distinction as to the considerations which are to control the electors in voting for legislative and judicial officers is suggested in *State v. Barker,* already cited.

It is well settled in this state that the Legislature may provide for the exercise by a court of the power to judicially determine facts which are made the conditions on which authority may be exercised by officers to whom is delegated the exercise of legislative and executive power. Thus a statute has been upheld which authorized a proceeding in the circuit court, as it formerly existed, to determine whether justice and equity required that certain

described territory, or any portion thereof, should be annexed to a city or town; but this statute was upheld, as against the constitutional objection founded upon the separation of the departments of government, only upon the theory that the facts on which the court was to determine the question were issuable facts, capable of judicial determination. *City of Burlington v. Leebrick,* 43 Iowa, 252.

It is to be noticed that the court vested by statute with this authority was not a constitutional court, but one whose functions were purely statutory; and it is well settled that such a court may be given legislative or administrative, as well as judicial, functions. *State v. Barker,* 116 Iowa, 96. In the case of *Ford v. North Des Moines,* 80 Iowa, 626, a statute, authorizing the district court to appoint commissioners, who shall call an election and determine the result thereof, on the question as to the annexation of territory, was sustained on the ground that no function was imposed upon the court other than to determine the regularity and sufficiency of the application as a matter of law. As already indicated, we think the function of the board of supervisors in determining the sufficiency of the petition for the establishment of a drainage district is judicial, and there is no reason why that judicial function might not have been vested in a court in the first instance had the Legislature so provided. In other states statutes providing for proceedings in court with reference to a creation of a municipal corporation, or the extension of its limits, have frequently been considered by the courts, with the general conclusion, supported by the great weight of authority, that if the proceeding involves the determination of a legislative question, or the exercise of administrative powers, the statute is unconstitutional, and that such statutes can be upheld only where they leave to the courts the determination of ques-

2. INFERIOR TRIBUNALS: legislative and administrative power.

tions of fact, as distinguished from the exercise of a general discretion involving the public interest. *Callen v. Junction City,* 43 Kan. 627 (23 Pac. 652, 7 L. R. A. 736); *State v. Simons,* 32 Minn. 540 (21 N. W. 750); *Forsyth v. City of Hammond,* 71 Fed. 443 (18 C. C. A. 175).

Questions relating to the establishment of a public highway are somewhat analogous, and it has been held that a statute authorizing a judicial tribunal to determine the existence of conditions specified therein as requiring the establishment of such highways is not unconstitutional, inasmuch as the question only of the necessity of the highway was to be submitted for judicial determination. *Citizens' Savings Bank v. Greenburgh,* 173 N. Y. 215 (65 N. E. 978). On the other hand, it has been said by this court that questions as to the public policy of establishing a bridge or making a street improvement are legislative in character, and the action of the tribunals specially charged with the responsibility in determining them is not to be reviewed by the courts. *State v. Morris,* 43 Iowa, 192; *Dewey v. Des Moines,* 101 Iowa, 416. Of course the Legislature may provide for a review in the courts of the action of a tribunal, legislative in character, which it has required to determine issues of a judicial nature; but it can not authorize such review of the exercise of a discretionary power. *Illinois Cent. R. Co. v. Chicago,* 141 Ill. 586 (30 N. E. 1044, 17 L. R. A. 530).

Somewhat analogous, also, are cases relating to the power of the Legislature to vest in the courts the determination of the question whether a telephone company or street car company shall be granted a franchise on the public streets. In the case of *Zanesville v. Zanesville Telegraph & Telephone Co.,* 64 Ohio St. 67 (59 N. E. 781, 52 L. R. A. 150, 83 Am. St. Rep. 725) the court considered the validity of a statute authorizing a proceeding in court to determine the rights of telegraph and

telephone companies in the streets of a city, where the authorities of the city and such a company are unable to agree with reference to such use by the company; and it was held that the statute was valid, because the jurisdiction conferred upon the court was to determine a controversy, between the municipal corporation and the private corporation, as to the method of use by each of a street appropriated to public uses.   It is to be noticed that the opinion in which the conclusion above indicated was reached was on rehearing, and set aside the former opinion of the court in the same case (63 Ohio St. 442, 59 N. E. 109), in which it had been specifically held that the statute was unconstitutional, as vesting in the courts powers of a legislative or administrative character.   The change of view of the court was expressly placed on the ground that the authority vested in the court under the statute was an authority to determine a controversy of a judicial nature.   In its last opinion the court carefully distinguished the case of *Appeal of Norwalk St. Ry. Co.,* 69 Conn. 576 (37 Atl. 1080, 38 Atl. 708, 39 L. R. A. 794), in which a statute, authorizing an appeal to the courts from the action of a city council in adopting a plan for laying the tracks of a street car company in the streets of the city, which might be adopted or modified as the council should deem proper, was unconstitutional.   The Connecticut case, which is thus approved in the Ohio case, is a very pertinent authority in support of the proposition that no appeals to the courts can be given with reference to the exercise of a power by a legislative or administrative tribunal which is in its nature discretionary.

Coming now to the specific question whether the wisdom and practicability of a proposed drainage scheme can be left to the determination of a constitutional court, we find the case of *Tyson v. Washington County,* 78 Neb. 211 (110 N. W. 634, 12 L. R. A. (N. S.) 350), to be directly in point.   In that case it is held that the question of

whether a drainage ditch, proposed to be constructed in pursuance of a statute, would be conducive to the public health, convenience or welfare, or whether the route thereof was practicable, was a question of governmental or administrative policy, and not of judicial cognizance on appeal, in view of the constitutional provision of the state as to division of powers between the several branches of the state government. After citing the Connecticut case, which we have already referred to, and our own case of *State v. Barker,* above cited, the court says: "This court has repeatedly held that the creation of drainage and irrigation districts, and construction of ditches under statutes substantially like that under discussion, are matters of governmental policy, falling within the province of legislative discretion, and that such works may be performed at public expense by general tax, or local assessment of especially benefited lands, or both, and may be aided by the issuance of bonds, to be paid out of the general revenues of the community. We think that no authority can be found holding that the policy or expediency of constructing any such public work, the exercise of discretion as to which is vested in any administrative board or official, can, in the absence of statutory permission, be interfered with or controlled by the courts; and, if it can not be so, the reason must be that the exercise of such discretion and functions raises no question of judicial cognizance, because the powers exerted are political and governmental in their nature. If the powers so exerted are of such character, exercise or control over them can not be by the Legislature conferred upon the courts; and, on the other hand, whenever a judicial controversy does in fact arise, the courts have an inherent right to intervene, without the permission, and even against the expressed will, of the Legislature. It is entirely clear, we think, that if the division of powers, established by the Constitution, and discussed by the foregoing authorities, in fact

exists, the Legislature is equally powerless to add to, and subtract from, the classes and character of questions with which the courts are entitled to deal."

In *Houseman v. Circuit Judge,* 58 Mich. 364 (25 N. W. 369), a statute was held unconstitutional which provided that a court, declaring void the proceedings by which any drain had been located or established, might upon application of either party appoint commissioners to relevy the tax for such drain, and apportion the costs thereof among the parties interested as justice might require, and it announced its conclusion in this language: "The duties which it imposes upon the courts are not judicial in their nature, but belong to the administrative branch of the government. The sending out surveyors or other persons to make examination or surveys to relevy taxes, in place of invalid ones, are each and all acts which do not pertain to the judicial branch of the government. The design of the Constitution is that each of the three branches of the government shall be kept, so far as practicable, separate, and that one of the departments shall not exercise the powers confided by that instrument to either of the others. Any legislation, therefore, authorizing an invasion of this design, and conferring upon the judiciary the exercise of powers belonging to either of the others, can not be regarded as valid." The cases of *Sauntman v. Maxwell,* 154 Ind. 115 (54 N. E. 397) and *State v. Jackson,* 118 Ind. 553 (21 N. E. 321) are not in point on the question now under consideration, for the reason that the constitutional question was not decided in those cases. This court has recently had occasion, in the case of *Hartshorn v. Wright County District Court,* 142 Iowa, 72, to express its views as to the exercise by a district court of the independent power to establish a drainage district, and has intimated that such power is not in its nature judicial. A similar intimation is found in *Temple v. Hamilton County,* 134 Iowa, 706.

We reach the conclusion that, both on principles of sound reason and in accordance with the great weight of authority, the lower court was right in holding that it had no jurisdiction to review the action of the board of supervisors in dismissing the proceeding instituted by these plaintiffs for the establishment of a drainage district, and its judgment is therefore *affirmed*.

EVANS, C. J., and WEAVER, J., both dissent.