T. S. SHAY et al., Appellants, v. BOARD OF SUPERVISORS OF RINGGOLD COUNTY et al., Appellees.

DRAINS: Reversing Order of Establishment. An order establishing a drainage district, the wisdom of which has been vouched for by both the board of supervisors and the district court, will not be disturbed on appeal, in the absence of a very clear showing by appellant that due consideration has not been given to the proved facts and circumstances, even though the drainage proposed may not, in some minor respects, be a complete success.

*Appeal from Ringgold District Court.*—H. K. EVANS, Judge.

JANUARY 22, 1919.

THE board of supervisors of Ringgold County, acting upon the petition of a number of landowners, ordered the establishment and improvement of Drainage District No. 1. Certain objectors appealed from said order to the district court of that county, where the action of the board was sustained. From that judgment, futher appeal brings the matter to this court. There were five separate appeals from the order of establishment, all of which are here consolidated for our disposal in a single opinion.—*Affirmed.*

*Carr, Carr & Evans,* and *Spence, Beard & Hayes,* for appellants.

*Frank F. Fuller, Chas. J. Lewis,* and *Geo. A. Johnson,* for appellees.

WEAVER, J.—This appeal involves no disputed questions of jurisdiction, or of the regularity of the proceedings in which the drainage district was established. As stated by counsel for appellants in argument, the two contested propositions are:

(1) Was the plan recommended by the engineer a practicable or feasible one?

(2) Was the burden to be imposed by the proposed improvement greater than should be borne by the land to be benefited?

Appellants' position is that the plan was neither feasible nor practicable, and that the cost or burden of the improvement was out of reasonable proportion to the benefits to the district.

Both of these inquiries pertain to matters of fact, and upon both, the board of supervisors, having original jurisdiction, and the district court, exercising appellate jurisdiction, have found with the petitioners for the improvement. Under the statute, these proceedings are to be treated as partaking of an equitable nature, and this court is not bound by the findings of fact in the court below, if, upon

full consideration of the entire record, it is satisfied that the decision appealed from is clearly against the evidence. It is, nevertheless, true that, as the board of supervisors had the advantage of personal acquaintance with the district, and knowledge of its topography and other characteristics, and the district court had the advantage of hearing the witnesses at first hand, their united holding or conclusion is entitled to great weight, and should be reversed only upon very convincing proof that these tribunals have failed to give due consideration to the proved facts and circumstances. Many of these appeals have been brought to this court; and, while we have sustained the refusal of the board to establish drainage districts prayed for, as against the contrary holding by the district court (*Zinzer v. Board,* 137 Iowa 660), and have sustained the district court in overruling the board's order establishing a district (*Focht v. Fremont County,* 145 Iowa 130), and have sustained the action of both the board and the district court in denying a petition for the establishment of a drainage district (*Denny v. Des Moines County,* 143 Iowa 466), we are cited to no case, and we now recall none, where we have assumed to set aside the order for such an improvement, against the united opinion of the board and the trial court. *Temple v. Hamilton County,* 134 Iowa 706; *Prichard v. Board,* 150 Iowa 565; *Chicago, M. & St. P. R. Co. v. Monona County,* 144 Iowa 171; *Mittman v. Farmer,* 162 Iowa 364, 372. We have also held that the objector who seeks the overruling of an order of establishment assumes the burden of proof, and that an order of establishment will be disturbed only upon a fairly clear showing of error. *Hall v. Polk,* 181 Iowa 828.

The cases, as a whole, leave the boundary line between legislative and judicial functions in the matter of establishing drainage districts enveloped in some degree of fog and uncertainty, but the right of this court upon appeal to review the record upon the questions raised in the

present case seems to be clearly held in *Focht v. Fremont County,* supra; and, following that precedent, we have examined with considerable care the record of the trial below. As usual in cases of this kind, it is evident that partisanship and self-interest have led to some extravagance of statement by witnesses on either side, as well as to some discord in the opinions of experts; but it is also to be said that many of the material facts are fairly well proven.

So far as concerns the objection to the cost of the improvement, the evidence tends to show that the aggregate of expense reasonably to be anticipated is somewhere from $10 to $14 per acre, upon the lands included within the district, an amount clearly not *per se* great enough to raise any presumption of extravagance; and whether it is a greater burden than the lands ought to bear depends wholly upon the benefits, if any, which the district as a whole will derive from the drainage when completed. Any assessment, however light, is burdensome if the district receives no corresponding or proportionate benefit from the expenditure of its money. Advance estimates of benefits are, of course, matters of opinion or judgment, rather than of accomplished fact, and may prove to be mistaken; but, as applied to drainage, the present condition of the drainage area, its topography, and the proved results of other similar undertakings under approximately the same conditions, ought to lead an intelligent and impartial tribunal, to which the question is submitted, to a reasonably safe conclusion whether the proposed improvement is a desirable one, and whether its benefits will justify the expense. All these matters were laid before the court below, and, we presume, had its consideration. It may be thought that the average board of supervisors is too close to the parties on either side of such a proposition to act with entire freedom of judgment, but such objection to the court which reviews its decision is not often well founded.

We discover nothing in the record to indicate that the case was not fairly tried. On the contrary, the trial court manifested throughout, anxious care to have the facts developed as fully and clearly as possible; and in our judgment, its findings are not open to serious criticism.

It would be unprofitable to burden this opinion with any statement of the evidence of the numerous witnesses, or with cuts of the numerous maps and charts which have been laid before us. There are a few things, however, of which there is no serious dispute, and which should be made clear. A stream, known as Platte River, makes its way through the entire length of the district, by an extremely crooked and irregular channel. It is not of uniform width or depth, and at times carries a large volume of water. It is subject to frequent overflow, which renders the useful employment of adjacent lands precarious, and is often destructive of farm crops grown thereon. The proposed ditch is intended to intercept the flow of this stream at the upper boundary of the district, and carry it in a comparatively straight line to a point near the lower boundary, where it will discharge again into the natural channel. Between these two terminals, the ditch will be 14½ miles in length, while the present course of the river between the same points is about three times that length. The fall per mile of the bottom of the old channel is but from one fourth to one third of the rate on the bottom of the ditch. Water entering the district at its upper boundary will be carried to the lower boundary in much shorter time through the ditch than is possible through the present tortuous channel. The average court is not an expert drainage engineer; but since it knows, presumably, that water under normal conditions runs down hill, and that, the sharper the slope of the hill, the sooner the flow will reach the bottom, it is not hard to believe that, with this proposed improvement completed, the drainage district will be relieved

of its overflow waters more quickly and more effectually through the aid of the ditch than would be possible if left to depend on the natural drainage through the old channel. It would also seem reasonable that, while such improvement may not remove all danger of the greater or extraordinary floods which sometimes defy all barriers, it may be depended upon to avert lesser floods to a very appreciable degree, and insure to the owner a more certain and more profitable use of his land. It is very possible, as contended by some of the witnesses, that, as the river below the mouth of the ditch is to be left in its natural condition, it will naturally check the flow coming down through the ditch, and to some extent set it back upon some of the land in the district; but if this be so (which does not appear to be at all certain), it shows no more than that some lands in the district will be benefited to a greater extent than others, and this disparity ought to be capable of adjustment in the apportionment of benefits, if not in the assessment of damages. Moreover, such conditions are not necessarily permanent or irremediable.

Among other reasons urged upon our attention as showing the impracticability of the improvement in an engineering sense, it is said that there are places where the bed of the old channel is below the bottom of the proposed ditch, rendering it impossible to drain the river into or through the ditch. The explanation of this seems to be that, in its long and serpentine course through the district, the river as is usual in sluggish streams, is, to a considerable extent, a succession or series of holes or pools, with intervening shallows. In some of these holes, the bottom of the stream is below the bottom of the proposed ditch; and, of course, they will not be fully emptied by the improvement. This may be evidence that the drainage is not perfect, in that it will not take all the water from every pool in the district;

but such a standard of perfection would defeat practically all improvement. The excellence or success of every public enterprise is generally a question of comparison and approximation; and, if this drainage district, when improved according to plan, gives reasonable promise of substantial benefit to the property therein, at a not exorbitant expense, it should not be condemned because, in some minor respects, it does not accomplish all that some of the interested parties desire.

The judgment of the trial court is well supported by the evidence, and it is, therefore,—*Affirmed.*

LADD, C. J., GAYNOR, PRESTON, and STEVENS, JJ., concur.