H. L. THOMPSON, Appellee, v. BOARD OF SUPERVISORS OF BUENA VISTA COUNTY et al., Appellants (and 191 other cases).

**DRAINS:** Establishment—Annexing Additional Lands—Right of Appeal. An order by joint boards of supervisors, annexing additional lands to an already established intercounty drainage district, is appealable to the district court for the purpose of trying anew the quasi judicial issue whether such additional lands will be benefited by the proposed improvement; and on such appeal the court has power to exclude such lands from the district in case it is clearly shown that they cannot be benefited in any degree by the proposed improvement. (See Book of Anno., Vol. 1, Sec. 7526.)

ALBERT, J., dissents.

**WATERS AND WATERCOURSES:** Surface Waters—Right of Discharge. Principle asserted that a landowner may freely avail himself of the topography of his land, and may discharge his surface waters wherever gravitation naturally carries them, without further concern or obligation on his part. (See Book of Anno., Vol. 1, Sec. 7736.)

Headnote 1: 19 C. J. p. 623.   Headnote 2: 40 Cyc. p. 641.

*Appeal from Pocahontas District Court.*—D. F. COYLE, Judge.

DECEMBER 15, 1925.

REHEARING DENIED APRIL 9, 1926.

IN the district court, this was an appeal from the action of a joint board of the supervisors of four counties in establishing a

joint drainage district under the provisions of Section 1989-a54, Code Supplement, 1913. The district court reversed the action of the joint board. From such judgment by the district court the defendants have prosecuted this appeal.—*Affirmed.*

*Malcolm Currie, Jacobs & McCaulley,* and *Healy & Breen,* for appellants.

*T. F. Lynch, F. C. Gilchrist,* and *E. A. Morling,* for appellees.

EVANS, J.—The case hereinabove entitled is one of 192 cases which were consolidated for trial in the court below, whereby the evidence taken in this case was made applicable to

1. DRAINS: establishment: annexing additional lands: right of appeal.

all. It appears that, in June, 1917, the joint board of supervisors of Buena Vista, Calhoun, Pocahontas, and Sac Counties appropriately established Joint Drainage District No. 181, which comprised 108,000 acres of land. The cost thereof was estimated at approximately $800,000. This district comprised the lower lands lying contiguous and adjacent to "Big Cedar Creek." It provided for the deepening of "Cedar Creek" for the purpose of furnishing drain outlets for the lower lands. No complaints are presented from landowners in such district.

In August, 1917, however, the joint board passed a resolution appointing another engineer, one Mayne, and directed him to prepare a plat of the entire watershed of "Big Cedar Creek" which was dominant over the proposed improvement. Pursuant to this resolution, the engineer reported and recommended the inclusion within District No. 181 of an additional 102,000 acres of land lying topographically above the proposed improvement and within the watershed of "Big Cedar Creek." Over appropriate objections by many landowners in the additional territory, the joint board adopted such report, and included such additional 102,000 acres. By such proceeding the joint board extended its jurisdiction over approximately 50 drainage districts previously established in the respective counties. With a few exceptions, which are not involved in these appeals, these drainage districts were all complete and efficient

in themselves.   All of them had adequate outlets into natural watercourses which were far removed from "Big Cedar Creek," although the water discharged therefrom finally found its way into such creek.   In none of the districts involved in these appeals was there any need of improved outlets.   In none of them were the outlets improved by the construction of the proposed improvement.   In the proceedings enlarging the district, no change was made in the location of the improvement or in its extension.   The proposed improvement was precisely what had been adopted in June, 1917.   The plaintiff's land was included in District No. 41 in Pocahontas County.   This drainage district had an outlet in a natural watercourse some miles distant from "Cedar Creek."   It not only had an abundant fall at its outlet, but such fall was even excessive.   Its waters were discharged over a "drop off" of $3\frac{1}{2}$ feet.   What is descriptive of the drainage system in No. 41 is approximately descriptive of many of the other districts.   Some of these districts had elevations 100 feet higher than the highest elevation in District No. 181.   The minimum elevation was very substantial.   All the districts from which these appeals come, were many miles distant from any contiguity to "Big Cedar Creek."   Such distances varied from 10 to 25 miles.   The only theory advanced by the joint board for their inclusion was that they were in the upper watershed of "Big Cedar Creek," and their waters all necessarily found their way ultimately into "Big Cedar Creek." All of this watershed within the four counties of the joint board was included in the additional territory.   The watershed itself, however, extended into other counties, Palo Alto and Clay, which could not be included, without enlargement of the joint board, and perhaps  without peril to the power of the voting majority.

The broad ground upon which the appeal was prosecuted from the action of the joint board to the district court was that such action was arbitrary, and not justified under the statute, because the improvement did not, and could not, work any benefit whatever to the lands of the complainants.   In the district court the defendants challenged the right of the complainants to appeal from the order of establishment, on the theory that the action of the joint board, thus appealed from, was purely

legislative in character, and that no appeal would lie therefrom for that reason. The district court overruled this contention, and heard the case on the merits. A considerable volume of evidence was taken, including that of several engineers. The evidence was overwhelming and undisputed in support of the contentions of the complainants. The defendants offered no contradiction thereto.

The one ground of reversal urged here by the appellants is that the district court had no jurisdiction because the proceedings under attack were legislative, and that there was no right of appeal therefrom. To this question we turn.

It is not claimed that there is a lack of statutory authority conferring the right of appeal in such case. The argument is that there is no constitutional power in the legislature to confer legislative powers upon the court, and that, therefore, statutory provisions to that end are ineffective. As an abstract proposition, let this be conceded. It may be assumed, also, for the purpose of the argument, that the establishment of a drainage district pursuant to the statute involves, to some extent and in some respects, the exercise of legislative power. It does not follow that the power thus exercised is *wholly* legislative. Under Section 1989-a54, Code Supplement, 1913, it is made a condition precedent to the exercise of the power therein conferred, which power is herein involved, that there be a finding of certain facts. One of such facts is that the proposed improvement will benefit the lands which are proposed to be included. The finding of such a fact is the exercise of a quasi judicial function. We have always so held. *Focht v. Fremont County*, 145 Iowa 130. The appeals in these cases were all predicated upon the claim that such finding of fact by the board of supervisors was erroneous. Such finding of fact by the joint board directly affected the property rights of the complaining landowners. The joint board found also, as a condition precedent, that the proposed improvement would be a *public benefit*. Whether such finding involved the exercise of judicial function we need not determine, because it is not involved in this case. The chief reliance of appellants for authority is upon *Denny v. Des Moines County*, 143 Iowa 466. The extended discussion in that case includes some language which might bear the interpretation that appel-

lants put upon it, if separated from its context. That opinion was rendered by a divided court. It was quite promptly followed by *Focht v. Fremont County,* 145 Iowa 130, wherein the *Denny* opinion was carefully analyzed and interpreted, and attention was directed to the limited scope of what was actually decided therein. In the *Denny* case, the board of supervisors had *refused* to establish a levee district, having made a finding that it would not be conducive to the public health and convenience. The appeal was taken by private parties from such *refusal* to establish. It was held: (1) That the discretion conferred upon the board was such as to forbid our interference; (2) that the finding of the board that it would not be to the public interest and would not be conducive to public health to establish such district was the exercise of a legislative function, and not a judicial one.

Such holding furnishes no support, unless by analogy, to the position taken by appellants herein. In the *Focht* case, supra, we said:

"It is true that in the *Denny* case we held there could not be an appeal from a finding of the board of supervisors that a proposed drainage was not for the public benefit or utility or conducive to public health, convenience, or welfare, for the reason that such question was legislative, and not judicial, in character. There was no holding, however, that there could not be an appeal by anyone in such proceedings. That question was carefully guarded in the opinion filed. * * * What the *Denny* case really decides is that there can be no appeal to the district court from an order of the board of supervisors finding that a proposed drainage district is not for the public benefit or utility, or conducive to the public health, convenience, or welfare, and a refusal to establish the district on that account. That is quite a different proposition from an appeal by landowners within a proposed district, whose land is to be taxed with the expense of the proposed improvement, from an order of the board establishing such a district, and ordering the improvement made at the expense of the landowners, whose lands can only be taken in consideration of benefits conferred. In the one case, no one's property is taken, and no one's possession is disturbed. In the other, his property may be taken, his pos-

session disturbed, and his lands appropriated for public or semipublic purposes. True, in the latter case the act of the board of supervisors is legislative, or *quasi* legislative, in character, but by statute it has some questions of fact to determine which may properly be made the subject of judicial review, before the property of persons interested may be taken or made subject to an assessment tax.''

The foregoing limitation and perhaps qualification of the scope of decision in the *Denny* case have been consistently adhered to in all our subsequent cases. We have held repeatedly that the order of establishment of a district by the board of supervisors becomes conclusive upon all nonappealing parties served with notice thereof, that the lands included *do all receive some benefit*. No landowner may thereafter assert that his land was not benefited. We have held that his failure to appeal from the order of establishment precludes him from saying that his lands were improperly included, or that they received no benefit. In *Chicago & N. W. R. Co. v. Board of Supervisors,* 182 Iowa 60 (cited by appellants), we said :

''The issues thus presented were decided against it by the board, and, though *having a right to appeal,* appellant did not exercise it. This, under well settled rules, forecloses further insistence that the district was made to include lands which should have been omitted. In *Lyon v. Sac County,* 155 Iowa 367, we said that the finding of the board establishing the district necessarily involved a determination that the land was of the character essential to authorize the improvement. Again, in *Kelley v. Drainage District,* 158 Iowa 735, we expressly held to the rule that the only remedy of a landowner served with notice and objecting to the inclusion of his land within the district '*is by appeal to the district court,* and a failure to avail himself of that remedy is a waiver of all others.'''

In *Kelley v. Drainage District,* 158 Iowa 735 (cited by appellants), we said :

''This is tantamount to saying that the only remedy of an owner of lands contained therein, made a party to the hearing on the petition for the establishment of the drainage district, *is by appeal to the district court,* and a failure to avail himself of that remedy is waiver of all other remedies.''

Many appeals from orders of establishment by the board have been prosecuted through the district court to this court. In some of these cases we have expressly sustained the right of appeal. In others, the right has not been challenged. In none of them has the right been denied. *Mittman v. Farmer,* 162 Iowa 364; *Simpson v. Board of Supervisors,* 180 Iowa 1330; *Hall v. Polk,* 181 Iowa 828; *Shay v. Board of Supervisors,* 185 Iowa 282; *Stahl v. Board of Supervisors,* 187 Iowa 1342; *Shaw v. Board of Supervisors,* 195 Iowa 545.

In the case of *Mittman v. Farmer,* in *Hall v. Polk,* in *Shay v. Board of Supervisors,* and in *Shaw v. Board of Supervisors,* we expressly sustained the right of appeal.

In *Vinton v. Board of Supervisors,* 196 Iowa 329, which involved an appeal from an order of *refusal* to establish, we expressly sustained the right of appeal, but sustained also the action of the board on the broad ground of its statutory discretion.

It goes without saying that a wide latitude of discretion is conferred upon the board, in the establishment of a district, if the precedent fact conditions are established. The discretion to *refuse* establishment is a still broader one, and perhaps a controlling one. We have never interfered with the discretion so exercised.

It is to be conceded that, in the early stages of the consideration of the question here involved, language is to be found in some of our opinions which is inconsistent with our later holding. Such language is to be found in *Ross v. Board of Supervisors,* 128 Iowa 427, and in *C., M. & St. P. R. Co. v. Monona County,* 144 Iowa 171. At the time of the proceedings in the *Ross* case, there was no statutory provision for an appeal from an order of establishment of a drainage district. In *C., M. & St. P. R. Co. v. Monona County,* 144 Iowa 171, the pronouncement on this subject was predicated upon the *Ross* case. Both of these cases were decided prior to the *Focht* case, supra, from which we have quoted above. Our later holding in the *Focht* case necessarily had the same qualifying effect upon these cited cases as it did upon the *Denny* case.

Since our pronouncement in the *Focht* case, we have held consistently that an appeal does lie from an order of establish-

ment of a drainage district, and such later holding must be deemed controlling.

In *Incorporated Town of Carpenter v. Joint Dr. Dist.*, 198 Iowa 182, we have impliedly sustained the right of appeal from an order of establishment, by holding that it was the only remedy open to interested parties to challenge the regularity of the procedure in fixing the boundaries of the district.

We hold, therefore, that the claimants had a right to appeal from the order of establishment, and to try *de novo* the issue upon the finding of fact that their lands would be benefited by the proposed improvement.

We have already indicated the state of the evidence in the record on that issue. It is wholly one-sided, and calls for no discussion. The fallacy which seems to have operated upon the mind of the joint board and of its engineer is one which we encounter not infrequently. That is, that a landowner is 'under some continuing obligation to "pay the freight" upon his own surface waters after they have left his lands, and until they reach an ultimate outlet. No such obligation exists. On the contrary, he may freely avail himself of the topography of his land, and may discharge his surface waters wherever gravitation naturally carries them, without further concern on his part as to where they go; for they are no longer his. *Rasch v. Drainage District*, 198 Iowa 31; *Zinser v. Board of Supervisors*, 137 Iowa 660; *Jenison v. Greene County*, 145 Iowa 215; *Thielen v. Board of Supervisors*, 179 Iowa 248; *Beals v. James*, 173 Mass. 591 (54 N. E. 245).

2. WATERS AND WATERCOURSES: surface waters: right of discharge.

There is no final outlet for the surfact waters of this state this side of the gulf. If a drainage district which discharges its waters in an adequate outlet, either one mile or ten miles removed from "Cedar Creek," is still liable for the dredging of such creek, because at a remote point its waters pass into it, then by the same logic it could be charged with benefits in the construction of the jetties at the mouth of the Mississippi.

The decree of the trial court reversed the finding of the joint board by excluding the lands of the complainants from the operation of the board's order, without prejudice to the

validity of such order as to the rest of the district. It is affirmed.
—*Affirmed.*

STEVENS, DE GRAFF, and VERMILION, JJ., concur.

ALBERT, J., dissents.

FAVILLE, C. J., and MORLING, J., not participating.