FREDERICK ERICKSON et al., Appellees, v. CITY OF CEDAR RAPIDS et al., Appellees; RIVER FRONT IMPROVEMENT COMMISSION et al., Appellants.

**MUNICIPAL CORPORATIONS:** Powers—Right to Rescind Action. 1 The action of a city council in attempting to exercise a discretionary power may be revoked by the council at *any* time before contract rights have become vested. So held where a city vested with ample power to improve river banks vested said powers in a river-front commission, approved a contract by the commission for the construction of the improvement, and later rescinded its entire action.

**MUNICIPAL CORPORATIONS:** Powers—Court Review of Discretionary Action. 2 Principle reaffirmed that the exercise by a municipal corporation of a discretionary power is reviewable by the court, to the extent of determining whether the action taken is (a) reasonable and (b) in furtherance of the granted power.

**MUNICIPAL CORPORATIONS:** River-Front Commissions—Inadequate Waterway. 3 Municipal corporations have no power, either through their councils or river-front commissions, to contract for the improvement of rivers in such manner as to provide for an *inadequate* channel. (Sec. 879-e, Code Supp., 1913.)

**MUNICIPAL CORPORATIONS:** River-Front Commissions—Approval of Plans. 4 The requirement of Sec. 879-f, Code Supp., 1913, that the plans, profiles, and specifications of river-front improvements be approved by the executive council, is mandatory.

**MUNICIPAL CORPORATIONS:** River-Front Commissions—Deprivation of Power. 5 A river-front commission which, under Sec. 1056-a48, Code Supp., 1913, has been invested by ordinance with all the powers of the city council over river-front improvements, may, by a repealing ordinance, be deprived of all such powers, and thereafter such commission will have no standing to question in any manner the action of the council on such improvements.

**MUNICIPAL CORPORATIONS: Powers—Refusal to Exercise—Review**
**6 by Court.** The action of a city council in rescinding a public improvement contract—under which the contractor is making no claim—is not reviewable by the courts.

**APPEAL AND ERROR: Coparty as Nominal Appellant.** A nonappealing coparty is made a mere *nominal* appellant when he is served with notice of appeal by another coparty. It follows that, when the appealing coparty has *no* standing on appeal, he may not insist that the rights of the *nominal* appellant be determined.

*Appeal from Linn District Court.*—MILO P. SMITH, Judge.

NOVEMBER 15, 1921.

REHEARING DENIED FEBRUARY 17, 1922.

SUIT in equity, to cancel a contract which provided for the construction of a concrete wall in the channel of the Cedar River at Cedar Rapids, Iowa, and other improvements. Interveners and defendants, except the city, prayed enforcement of the contract. Facts are fully set forth in the opinion. Decree was entered canceling the contract, from which this appeal is prosecuted.—*Affirmed.*

*Deacon, Good, Sargent & Spangler, Redmond & Stewart,* and *Trewin, Simmons & Trewin,* for appellants.

*L. D. Dennis* and *O. N. Elliott,* for appellees.

ARTHUR, J.—I. The contract involved, which appellees sought to have canceled and which appellants asked to have carried out, provides for: (a) Settlement of a division line between public and private property for a distance of three and one-half blocks on the easterly side of the Cedar River; (b) the construction of a perpendicular concrete wall in the channel of the river, and the filling in of a considerable portion of the channel; (c) the amount to be paid by the property owners toward the improvement.

1. MUNICIPAL CORPORATIONS: powers: right to rescind action.

The city of Cedar Rapids since 1908 had been operating under the commission plan of government. The Cedar River

runs through the city from a northwesterly to a southeasterly direction, dividing the city into what are known as the east side and the west side, and flows through the business section of the city. Previous to adoption by the city of the commission plan of government, there had been appointed, under the provisions of Chapter 210 of the Acts of the Twenty-ninth General Assembly, now Chapter 9-A, Title V, of the Code Supplement, 1913, a river-front-improvement commission, and under the provisions of that law (Section 879-e), this commission was authorized to "provide for and protect, by secure walls or banks, a channel adequate to carry flood waters of a volume equal to all reasonable expectations, based on past experience, and the area drained by such stream, according to expert authority," etc. The law further provided (Section 879-f) that, before commencing such work, the plans, profiles, and specifications should be submitted to and approved by the state executive council.

This commission did no work other than of a preliminary character, and there was no real attempt at river-front improvement until some time after the adoption by the city of the commission form of government.

By Chapter 66 of the Acts of the Thirty-third General Assembly, effective April 13, 1909 (Section 1056-a48, Code Supplement, 1913), it was provided that cities operating under the commission plan of government "shall have and may exercise all the right and powers conferred by said act [Chapter 210, Acts of the 29th General Assembly] on the said river front improvement commission, and all such rights and powers are hereby transferred to and vested in the city council of any such city or cities. Said council shall have the power to elect and shall elect a commission of three persons, to be known as the river front improvement commission, whose duties shall be to carry out the powers and duties with respect to the beds and banks of streams in such cities, herein conferred upon said city council, or such limited powers in respect thereto as the council may prescribe by ordinance."

Thereafter, on May 2, 1910, the city council appointed a board of three commissioners, and on the 31st day of January, 1913, passed an ordinance conferring on said river-front commission "all those powers and duties which were and are con-

ferred upon the river-front-improvement commission by Chapter 210, Acts of the Twenty-ninth General Assembly.''

Following the taking effect of Chapter 66 of the Acts of the Thirty-third General Assembly, and prior to the election thereunder of a river-front-improvement commission, and prior to the passage of the ordinance conferring on the river-front commission the powers granted by that act of the city council, the river-front-improvement commission, which had been elected under the original law of the twenty-ninth general assembly, and which continued in office without re-election, caused channel lines to be platted at the place of the wall in controversy.

The first improvement made by the commission was in 1914, when there was constructed a concrete perpendicular wall on the west side of the river, between First and Third Avenues, connecting the west abutments of First, Second, and Third Avenue bridges. This improvement on the west side having been made, the commission next turned its attention to the east side of the river, to the improvement in controversy, and negotiated with the property owners on a proposition to fill a part of the existing river channel for the erection of a driveway, the negotiations finally resulting in the contract involved in this action. The city, through its councilmen, approved and signed the contract.

On the 23d day of May, 1916, Frederick Erickson et al., appellees, instituted this action, and asked that the contract be canceled, and that all parties to the contract be restrained from proceeding with its enforcement, on the ground that the proposed construction of the east wall did not leave an adequate waterway for the flood waters of the river, and was, therefore, dangerous to the lives and property of the citizens of the city.

The river-front-improvement commission and the city, answering the petition, denied the material allegations, and the case remained pending for some time.

On March 26, 1917, there occurred a flood in the Cedar River at Cedar Rapids. The council, after inspecting the conditions during this flood and observing its height with reference to the bridges, came to the unanimous conclusion that it would be dangerous to construct the wall provided for in the contract.

The council then advised the river-front-improvement commission and the property owners, parties to the contract, of its changed mind and position, and requested the river-front-improvement commission to seek to obtain from the property owners a modification of the contract, so as to permit the river wall to be placed so as to conform to the abutments of the bridges, and to preserve so much of the waterway as had been left, from the encroachment of the property owners. The river-front-improvement commission refused to modify its plans, and would not consent to any modification or alteration of the contract. Thereupon, the city council passed an ordinance repealing the former ordinance, by which it had granted to the river-front-improvement commission the powers vested in it by Chapter 66 of the Acts of the Thirty-third General Assembly, and in the new ordinance limited the powers of the commission to certain minor duties not connected with the matters involved in this case.

On June 19, 1917, W. L. Cherry et al., appellants, taxpayers, intervened in the action, taking substantially the same position as the river-front-improvement commission, and prayed a decree for specific enforcement of the contract, and that the river-front-improvement commission be commanded to carry out the contract, and restraining the city council from performing any acts which would interfere with the carrying out of the contract.

As before mentioned, after the flood in March, 1917, the city council, being convinced that its former position was wrong, changed its position, and joined with the original plaintiffs, Erickson et al., appellees, in seeking to have the contract canceled. In August, 1917, the city filed a cross-petition, making James B. Nelson et al., parties to the contract, defendants, and prayed that the contract be canceled.

The issues as finally made up arranged the original plaintiffs, Erickson et al., and the city, an original defendant, on one side, asking the cancellation of the contract, and on the other side, the river-front-improvement commission, James B. Nelson et al., parties to the contract, and W. L. Cherry et al., taxpayers, interveners, asking for specific enforcement of the contract. The court found for plaintiff and the city, and en-

tered a decree setting aside the contract, and enjoining the carrying out of the terms of the contract. From this decision the river-front-improvement commission and W. L. Cherry et al. separately appealed. James B. Nelson et al., made defendants in the cross-petition filed by the city, have not prosecuted an appeal to this court. The river-front-improvement commission and W. L. Cherry et al., appellants, served notice of their appeal on James B. Nelson et al., and by such service they claim that said parties are appellants in this court. Appellees claim that said parties are not appellants. This question will be considered later in this opinion.

II. The main law question is presented by appellees' taking the position that the river-front commissoners, at the time of the trial, had no legal power or authority, under the law or ordinances of the city, and were not entitled to the relief asked, and by appellants' contending that the wall was to be constructed on a channel line previously adopted by the river-front-improvement commission and approved by the city council and the state executive council; and that the line as thus fixed was conclusive; that the adoption of this channel line, in this manner, constituted an act by the executive department of the state, involving the exercise of discretion; and that said discretion and judgment were properly exercised, in accordance with law, and are binding and conclusive; and that the court has no jurisdiction to inquire into it, or to set aside those acts, or to change or modify the location of the channel lines so established; and that they were entitled to the specific enforcement of the contract against the city.

An ultimate fact issue was presented by appellees, alleging, in substance, that the contract, if carried out, would endanger the lives and property of the citizens of Cedar Rapids, because the proposed construction would so narrow the river as to make the channel inadequate to carry the reasonably to be expected flood waters; that the councilmen of the city were induced to authorize the execution of the contract, on behalf of the city, by representations by the river-front-improvement commission and by the property owners that they had had a full and complete investigation made by expert engineers as to the adequacy of the channel proposed, and that ample provision had been

made for carrying all of the flood waters of the Cedar River
which could, within reason, be expected; that, contrary to said
representations, and after the signing of the contract, the city
learned that there had not been sufficient waterway provided
for carrying the flood waters of the river, and that a thorough
investigation had not been made; that, under the terms of the
contract, the proposed river wall would intersect the easterly
or shore arches of two ornamental concrete bridges, and every-
thing easterly of said wall would be filled in, including the
covering up of the ends of said bridges, thereby spoiling and
marring the beauty of same; and that the carrying out of said
contract was injurious to the rights of the people of the city;
that said construction was further dangerous in that, by di-
minishing the area of the bridge openings, there was much
greater likelihood of the formation of a gorge of ice or debris
at times of high water; that the carrying out of the contract
would be contrary to public policy; and that the proposed chan-
nel, of which the construction provided by the contract was a
part, did not comply with the statutory requirement that it be
"adequate to carry flood waters of a volume equal to all reason-
able expectations, based on past experience, and the area drained
by such stream, according to expert authority."

The river-front-improvement commission, W. L. Cherry
et al., and James B. Nelson et al., deny these allegations and
affirmatively allege, in substance, that sufficient provision had
been made for carrying the flood waters of the river, and that
the carrying out of the contract would be a benefit to the citi-
zens of Cedar Rapids, and that failure to carry out the contract
would result in great loss to the city and its inhabitants.

III.    In the year 1902, the twenty-ninth general assembly
enacted the original river-front law, Chapter 9-A, Code Supple-
ment, 1913. By the terms of that act, there was provided a body
corporate, known as the river-front-improvement commission,
consisting of three members, originally appointed by the gov-
ernor, and provision was made for their subsequent election by
the people of the city. This commission was given authority
and power with respect to the improvement of the banks of
meandered rivers and the construction of river walls, subject
to the statutory requirement that, in the making of such im-

provements, there must be provided and preserved a channel adequate to take care of the flood waters of the river equal to all reasonable expectations, etc.

In the year 1907, the thirty-second general assembly made provision for the adoption by certain cities of the commission form of government. The following year, the city of Cedar Rapids adopted the commission form of government provided for by such law. In the year 1909, the thirty-third general assembly, by the provisions of Chapter 66, took away all of the authority and powers theretofore given to the river-front-improvement commission under the provisions of the act of the twenty-ninth general assembly, and bestowed all of such authority, powers, and duties, with the right to exercise them, on the city council, in cities under the commission form of government. This act further provided for the election by the city council of a river-front commission, consisting of three persons, "whose duties shall be to carry out the powers and duties with respect to the beds and banks of streams in such cities, herein conferred upon said city council, or such limited powers in respect thereto as the council may prescribe by ordinance."

About April 4, 1910, the channel line adopted by the river-front-improvement commission was approved by the city council, and was submitted to and approved by the executive council of the state of Iowa on June 15, 1910. On May 2, 1910, the city council elected three commissioners, as provided by Chapter 66, Acts of the Thirty-third General Assembly.

On January 31, 1913, the city passed an ordinance, by the terms of which it bestowed upon the river-front-improvement commission all the rights and powers which had been delegated to the city council under Chapter 66 of the Acts of the Thirty-third General Assembly.

On May 5, 1916, the contract involved in this action was signed by the mayor.

On June 29, 1917, the city passed Ordinance No. 1279, repealing Ordinance No. 1041, above mentioned, and providing that "the river-front-improvement commission of the city of Cedar Rapids, Iowa, shall exercise only such powers and duties as are herein expressly provided for, and none others." Further provisions of the ordinance limited the powers of the

river-front-improvement commission to certain nominal duties, not connected with the controversy in the instant case.

It is the position of the plaintiffs and the city that, by repeal of Ordinance No. 1041, by which the city conferred upon the commission such powers and duties as had been taken from the commission and delegated to the city by Chapter 66, Acts of the Thirty-third General Assembly, the city was reinvested with all of the rights, powers, and duties with respect to the river-front improvements, and could control the kind and character of such improvement, subject only to the requirements of the statute and to the approval of the executive council of the state; that the city, having thus regained its power, could set aside and undo any act that had previously been done by it or by its agent, the river-front-improvement commission, unless other persons had acquired vested or contractual rights under the Acts of the Twenty-ninth General Assembly.

On the other hand, the river-front-improvement commission, appellant, and W. L. Cherry et al., taxpayers, appellants, maintain that the repeal of Ordinance No. 1041, which granted full power to the river-front-improvement commission, did not affect the rights of the property owners, parties to the contract; nor did it give the city council the right or power to rescind the contract; nor did the repeal of the first ordinance, or the subsequent action of the council, affect the location or validity and binding effect of the channel line.

Plaintiffs and the city do not ask to have the channel lines established in 1910 set aside and abandoned. As we understand the record, all that appellees asked was that the contract entered into in 1916 be set aside, and that the specific improvement provided for by that contract be enjoined. The decree entered affected only the contract provided for, and the specific form of construction.

Appellants insist that the establishment of the channel lines constitutes a legislative act, which is not subject to review by the court; and that the act, some years later, in entering into the 2. MUNICIPAL COR- contract for the building of a wall 23 feet high PORATIONS: pow- ers: court re- on such channel lines, is likewise beyond the view of discre- tionary action. power of any court to review. We think the contention of appellants as to the effect which they claim for a

legislative act is untenable. It is settled law in this state that, whenever any power involved in the exercise of discretion is vested in a municipal body or other public body, such discretion must be exercised reasonably, and in such a way as to further the purposes of the power so conferred; and that, if the body intrusted with such power does not so act, the courts have always exercised the right to set aside their finding and enjoin their acts. The general rule is well stated in 1 McQuillin on Municipal Corporations 831, Section 378 and Section 382; *Iowa City v. Glassman,* 155 Iowa 671. In the *Glassman* case, we said, quoting from *Hall v. City of Cedar Rapids,* 115 Iowa 199:

"Where general power is given a municipality, it must be exercised in a reasonable manner; and, if it is not so exercised, it is the duty of the courts to protect those who may suffer thereby."

The position of appellants, that the relief asked by appellees involves the review of a discretionary act by a legislative body, we think is untenable, and in any event, cannot be raised by appellants. This is a prerogative belonging solely to the public body the exercise of whose discretion is involved,—in the instant case, the city council. After the council had exercised its discretion with respect to the construction of the wall in the first instance, by granting to the commission, by Ordinance No. 1041, the power that it (the city) possessed, as to river-front improvements, and had afterwards approved the action of the commission in providing for a wall to be erected on the channel line fixed in 1910, and had approved the contract entered into by the commission and property owners, the city, through its council, having exercised its discretion with respect to the matters involved in the contract, may likewise exercise its discretion to undo that act, and decide that it will not make the improvement, provided that the rights of persons under the contract are not thereby unlawfully disturbed. The city council, being the body vested with discretion with respect to river-front-improvement matters, under the existing laws and ordinances of the city, can lawfully rescind any action taken by it or by its agent, the river-front-improvement commission, unless other parties have a valid and enforcible contract right. As we understand the issues, what the city insisted

upon was that the wall contemplated in the contract should not be constructed on the channel line which had been surveyed and platted. The city did not ask a change of the channel line, nor did the plaintiffs; but it was solely the cancellation of the contract providing for a particular form of construction, and the carrying out of such contract, that were in issue.

The power conferred by the legislature, in the first instance, under the Acts of the Twenty-ninth General Assembly, upon the river-front-improvement commission, and afterwards, by the thirty-third general assembly, upon the city, was restricted power. We scarcely need to discuss the powers of a municipal corporation restricted by statute. The power vested in the first instance in the commission, and afterwards revoked and placed in the city, was very specific, and a definite limitation was placed by the legislature upon the exercise of such power. The statute says that, in making river channels, there must be provided ''a channel adequate to carry flood waters of a volume equal to all reasonable expectations, based on past experience, and the area drained by such stream, according to expert authority.'' Under such statutory restriction, neither the city nor its agent, the river-front-improvement commission, had the lawful right to establish or construct a channel having less capacity than this; and whether the public bodies which are intrusted with power over such matters are keeping within the limitation which has been put upon them by the legislature is a question of fact, which is subject to investigation and review by the courts, as the courts are always empowered to investigate and determine whether or not the public body is acting in accordance with the directions and requirements of the law under which they derive their power and authority. Such public bodies have no discretion to exercise as to whether they will or will not keep within such statutory limitations and restrictions. This is compulsory.

3. MUNICIPAL CORPORATIONS: river-front commissions: inadequate waterway.

Appellants claim that plaintiffs, taxpayers, and the city were not entitled to ask for an injunction in a court of equity. We think it is elementary that a taxpayer can restrain the illegal acts of public officials. *Bilsborrow v. Pierce,* 101 Minn. 271 (112 N. W. 274); *Moffitt v. Brainard,* 92 Iowa 122. Then,

assuming, without passing thereon, that the commission and interveners are entitled to a trial of this cause in this court *de novo,* and conceding, for the purpose of argument, that the defendant property owners are to be considered as appellants, yet even then the decision of the trial court, we think, should be affirmed; because the contract is void, for the reason that neither the city nor the commission had the right to contract away the power to at any time widen the river channel; for this right belongs to its police powers, and cannot in any manner be restricted or surrendered. If the location of the wall, as provided by the contract, is dangerous to life and property, and an unreasonable and arbitrary exercise of discretion, the power to relocate the river wall so as to make a wider channel, cannot be restricted by contract. Under the statute, the city is given the power to control the beds and banks of the river within the city limits, to improve the banks of such river, and to construct river walls, so as to prevent damage from flood waters. This is a governmental right, and just the same kind of a right that the city has in controlling the streets. The exercise of each belongs to its broad police powers. The city cannot contract to maintain river walls in a definite location, and bind itself from subsequently putting these walls farther apart, in order to provide adequate channel, any more than it could contract for all time to surrender its control of its streets. 1 McQuillin on Municipal Corporations 842, Section 382; *State v. Minnesota Trans. R. Co.,* 80 Minn. 108 (50 L. R. A. 656); *Snouffer v. Cedar Rapids & M. C. R. Co.,* 118 Iowa 287.

It is apparent, therefore, that the alleged contract was not binding on the city, and that the city has power at any time to locate walls confining the waters of the river so as to provide an adequate waterway.

We think the contract is further illegal in that it provides for a definite form of construction in the river. Section 879-f of the Supplement to the Code, 1913, provides:

"That said commission may adopt plans, profiles, and specifications for the improvement of the said river channel and 4. MUNICIPAL CORPORATIONS: river-front commissions: approval of plans. banks, and the reclaiming of lands between the meandered lines of said stream within such city, and the construction of dams; but before be-

ginning the execution of the same, such plans, profiles, and specifications shall be approved by the executive council of Iowa.''

This section is a part of the original river-front-improvement law, and by the provisions of Section 1056-a48, the duty and power therein devolved upon the commission are transferred to and are to be exercised by the city council. However this may be, and whether the duty is to be exercised by the commission or by the council, the statute clearly requires that, before any construction can be made, the plans, profiles, and specifications of the construction must be submitted to and approved by the state executive council. As we understand from the record, this was not done. The executive council did approve the channel lines; but the plans, profiles, and specifications for the construction of a wall on the east side of the river on the channel line between First and Fifth Avenues, the proposed wall in controversy in this cause, were never presented to the executive council for approval. It cannot be successfully contended that securing approval of the executive council of the channel lines was a compliance with this provision of the statute, because no plans, profiles, and specifications of any improvement or construction work were submitted in connection therewith, or were involved in the approval of the channel lines.

For the reasons above given, or either one of them, we may determine that the contract need not be enforced, without examination of the testimony in the cause, which goes to the adequacy and safety of the proposed channel to be made by the proposed wall. We think this is true even though the property owners, who are parties to the alleged contract, are to be considered as appellants, insisting upon litigating in this court their rights under the contract.

From a résumé of the record it appears that the original river-front law created the river-front-improvement commission, and gave it authority and power with respect to the improvement of banks of meandered rivers, such as the Cedar River, and the construction of river walls, subject to statutory requirements. Later, the commission form of government was provided for by the legislature, and the city of Cedar Rapids adopted it. Later, in the year 1909, the thirty-third general

assembly took away from the river-front-improvement commission all the powers and duties given it by the Acts of the Twenty-ninth General Assembly, and bestowed all such authority, powers, and duties, with the right to exercise them, on the city council, in cities under the commission form of government, and provided for the election by the city council of a river-front commission. It appears that, while acting under the Acts of the Twenty-ninth General Assembly, the river-front-improvement commission had surveyed and established certain channel lines, and the plans were presented to and approved by the executive council on June 15, 1910. The commissioners who laid the channel lines had been appointed under the original act of the twenty-ninth general assembly; but it seems that the commissioners, although they were the same men who presented the plans for approval to the executive council, had been elected on May 2, 1910, by the city council, under Chapter 66, Acts of the Thirty-third General Assembly. Afterwards, on January 31, 1913, the city passed an ordinance, which is Ordinance No. 1041, bestowing upon the river-front-improvement commission all the rights and powers which had been delegated to the city council under Chapter 66 of the Acts of the Thirty-third General Assembly. It was not until three years later, in April or May, 1916, that the contract involved in this cause was entered into by the interveners, property owners, on one side, and the river-front-improvement commission on the other side, which was later approved by the city. Afterwards, the city of Cedar Rapids, through its councilmen, changed its mind as to the location of the proposed sea wall. In March, 1917, a great flood occurred in the Cedar River, which caused the councilmen to doubt the safety of constructing a high wall on the channel line as provided by the contract, and thus attempting to confine flood waters by a wall such as contemplated. The councilmen protested to the commission the building of such a wall, and sought to have the wall erected eastward of that place, so as to provide, as the councilmen said, for a wider channel for the flowage of the water. Negotiations went forth with respect to that matter. The commissioners were unwilling to yield, and to modify their position that a 23-foot wall should be built on the channel line as provided in the contract. At this junc-

ture of the disagreement between the commission and the councilmen, the councilmen sought to revoke, and, as we think, did effectually take from the commission, all the powers and duties which it had theretofore conferred upon it by Ordinance No. 1041, by enacting Ordinance No. 1279, repealing Ordinance No. 1041, and providing that "the river-front-improvement commission of the city of Cedar Rapids, Iowa, shall exercise only such powers and duties as are herein expressly provided for, and none others." Ordinance No. 1279 limited the powers of the river-front-improvement commission to certain mere nominal duties, not connected with the controversy in this case. By this action, the city entirely changed its position and policy with respect to construction of the wall; and on August 3, 1917, the city filed an answer and cross-petition, praying that the contract which had theretofore been ratified be canceled and held for naught.

The appellants contend that the establishment of the channel lines constituted a legislative act, which is not subject to review by the courts, apparently taking the position that, when the channel lines were established and drawn on a plat in 1910, their act, some six years later, in entering into a contract for the building of a perpendicular wall 23 feet high on these channel lines, is likewise beyond the power of the court to review. As we understand the record, neither the plaintiffs nor the city, as cross-petitioner, asked to have the channel lines set aside or abandoned. All that the plaintiffs and the city asked was that the contract entered into in 1916 be set aside, and that *the specific improvement* provided for by that contract be enjoined. All that was affected by the decree was the contract providing for a *specific form of construction.* We are unable to agree with appellants on the effect which they claim for the establishment of channel lines and the subsequent executory contract to build a wall thereon.

We cannot avoid the conclusion that the city council, being the body vested with discretion with respect to river-front-improvement matters, under the existing laws and ordinance of the city, can lawfully revoke and rescind the action taken by it or by its agent, the commission, and may, in the exercise

5. MUNICIPAL COR-
PORATIONS:
river-front com-
missions: dep-
rivation of pow-
er.

of its discretion, decide that it will not make the improvement, unless other parties have a valid and enforcible contract right. Such reasoning leads to this point and presents this question: Have any of the appellants acquired such vested or contractual rights by the contract in controversy as will enable them to insist upon its being carried out, as against the decision of the city council? There was nothing compulsory about establishing the channel lines as building lines for any river wall. The city would have the right to construct a wall as far landward of the channel lines as it saw fit, even though such channel lines were authorized by law, and were legally established. It was not a change of the channel lines that was sought by either the plaintiff or the city, but was solely the cancellation of the contract providing for a particular form of construction, and the enjoining of the carrying out of its terms, that were in issue.

Counsel for appellants, in their argument, seek to avail themselves of all the rights and powers vested in the commission under the original law, and seem to ignore the later enactment. They contend that the commission is still a body corporate, still has discretionary powers, and is the only body which can exercise power with respect to river-front improvements, and that it has and retains all the rights conferred by the original act. These contentions are directly contrary to the plain provisions of Chapter 66, which states:

"That all cities, which have heretofore been organized and acting under special charters and which have heretofore, or shall hereafter adopt the plan of government provided in Chapter 48 of the Acts of the Thirty-second General Assembly of Iowa, as the same appears in Chapter 14-C, Title V, of the Supplement to the Code, 1907, and in which river front improvement commissions have been or shall hereafter be organized, under Chapter 210 of the Acts of the Twenty-ninth General Assembly of Iowa, as the same appears in Chapter 9-A, Title V, of the Supplement to the Code, 1907, *shall have and may exercise* all the right and powers conferred by said act on the said river front improvement commission, and all such rights and powers are hereby transferred to and vested in the city council of any such city or cities. Said council shall have the power to elect and shall elect a commission of three persons, to be known as the

river front improvement commission, whose duties shall be to carry out the powers and duties with respect to the beds and banks of streams in such cities, herein conferred upon said city council, or such limited powers in respect thereto as the council may prescribe by ordinance." Section 1056-a48, Code Supplement, 1913.

Thus the legislature, in addition to transferring all powers and duties of the river-front commission, as provided by the original law, to the city council, specifically provided that the city council "may exercise" such rights and powers. The manifest purpose of the legislature was to transfer all discretion and supervision over river-front improvements to the city council, in cities under the commission plan of government. This later statute provided that the only right or power of the river-front-improvement commission was *to carry out* the plans of the city council, or to carry out such portion of the plans of the city council as the city council might delegate to the commission. Nowhere is there any discretion or any power given to the commission, in Chapter 66 of the Acts of the Thirty-third General Assembly. By the express terms of the statute, the city council was intended to be supreme, and to have the right to determine the policy and character of such improvements. The statute specifically provides that the city council may *exercise* such powers and duties. In view of this, we do not see any escape from the conclusion that the power and discretion over all such matters as are embodied in the contract before us are in the city council; and since the enactment by the council of Ordinance No. 1279, which took away from the river-front-improvement commission everything except certain nominal duties, the river-front-improvement commission has no rights which it can assert in contravention of the position of the council. The commission, therefore, now has no rights under the contract which it can exercise, unless permitted to do so by the city council; and, under the existing ordinance, it is entitled to no relief.

So far as the interveners are concerned, we think they have no right to insist that the provisions of the alleged contract shall be carried out, or to ask this court to review the decision

6. MUNICIPAL
CORPORATIONS:
powers: refusal
to exercise: re-
view by court.

of the lower court. In their petition, interven-
ers allege that the settlement of the property
line, as fixed by the contract, was of great benefit
to the people of Cedar Rapids; and that, if the contract is not
carried out, the city and its inhabitants would be "great losers
thereby, financially and otherwise." If it should be conceded
that, as taxpayers, the interveners would be entitled to become
parties to the litigation, and to seek to have the contract en-
forced under these allegations, it was incumbent upon them to
substantiate this claim by proper evidence. But we are unable
to discover in the record any evidence supporting such claim,
and we must not indulge in conjecture as to such matters. As
we view it, the issue between the interveners and the city was
simply one of policy as to where the wall should be built. It is
elementary that taxpayers have no right to control such matters.
While taxpayers may have a right, under certain circumstances,
to prevent a public body from proceeding with the construction
of some particular improvement, they have no right to compel
the public body intrusted with the control of such matters to
proceed with a public improvement against its wish, to say
nothing of compelling the public body to adopt their views as
to the matter of construction. See *Denny v. Des Moines County,*
143 Iowa 466, in which we said:

"We think that no authority can be found holding that the
policy or expediency of constructing any such public work, the
exercise of discretion as to which is vested in any administrative
board or official, can, in the absence of statutory permission, be
interfered with or controlled by the courts; and, if it cannot
be so, the reason must be that the exercise of such discretion
and functions raises no question of judicial cognizance, because
the powers exerted are political and governmental in their
nature."

In the *Denny* case, the board of supervisors had refused to
establish a drainage district, and the action was to compel them
to do so. This decision is fully explained in the case of *Focht
v. Board of Supervisors,* 145 Iowa 130, in which we said:

"What the *Denny* case really decides is that there can be
no appeal to the district court from an order of the board of
supervisors finding that a proposed drainage district is *not*

for the public benefit or utility, or conducive to the public health, convenience, or welfare, and a refusal to establish the district on that account.''

See, also, *In re Drainage Dist. No. 3, Hardin County,* 146 Iowa 564.

In the instant case, the city council has determined that the improvement requested by the commission and by the interveners is not conducive to the public welfare and safety. Their decision in this regard is not subject to review by the court, and consequently, appellants are not entitled to a mandatory injunction, as prayed by them, to compel the city council to proceed with the construction of the river wall; and the fact that a contract was entered into for such improvement in no way enters into this phase of the case, because these appellants contend for no rights under or by virtue of the contract. This being true, they have no rights which entitle them to ask for a trial *de novo* on the propositions stated and argued by them.

In the court below, James B. Nelson et al., as property owners and parties to the contract, were asking that the contract be carried out. Conceding that they had the right in the lower court to litigate their rights under the contract, have they such rights involved in this appeal? They did not appeal from the decision of the lower court.

It is the position of the river-front-improvement commission, appellants, and W. L. Cherry et al., appellants, that James B. Nelson et al., defendants on cross-petition of the city, and

7. APPEAL AND ERROR: coparty as nominal appellant. parties to the contract, having been served with notice of the appeal by them, and not having appeared and objected, have joined in the appeal, and are before this court as appellants, and that their rights, under the contract, must be litigated here. This they claim by virtue of Code Section 4112, which reads as follows:

''Coparties, refusing to join in an appeal, cannot afterwards appeal, or derive any benefit therefrom, unless from the necessity of the case, but they shall be held to have joined, and be liable for their proportion of the costs, unless they appear and object thereto.''

We think that the river-front-improvement commission, being shorn of its powers by Chapter 66 of the Acts of the

Thirty-third General Assembly and Ordinance No. 1279 of the city, has no rights which it can assert, and no privilege of a trial *de novo*.

Under the conclusions above announced, we think that the interveners, as taxpayers, as a matter of law, had no right to insist upon having the provisions of the contract carried out, or to ask this court to review the decision of the lower court.

Now, the river-front-improvement commission and interveners having no right of their own availing them of a right to a trial *de novo*, can they predicate such a right upon the right which they contend that James B. Nelson et al., parties to the contract, have, to litigate their alleged rights under the contract in this court? We think not. By serving James B. Nelson et al. with notice of appeal, as codefendants, they made them nominal appellants. They are not before this court as appellants, seeking affirmative relief, as they did in the court below. They have abandoned their litigation. We think they may be considered only as nominal appellants, and privileged only to derive such benefit from the appeal as the necessities of the case award them, and as liable for their proportion of the costs.

We do not deem it necessary or advisable to determine the fact issue in the case, as to whether or not the construction of the wall proposed in the contract provides sufficient channel for the flowage of the waters of the Cedar River at flood time.

The decree of the lower court is affirmed.—*Affirmed.*

EVANS, C. J., STEVENS and FAVILLE, JJ., concur.