STATE OF IOWA ex rel. LOUIS KLISE, appellee, v. TOWN OF RIVER-DALE et al., appellants.

No. 48091.

(Reported in 57 N.W.2d 63)

424

Lane & Waterman, of Davenport, for appellants.

Carl H. Lambach and Margaret Stevenson, both of Davenport, and Albert J. Stafne, of Bettendorf, for appellee.

MULRONEY, J.—On September 29, 1948, the City of Bettendorf adopted a resolution for the annexation of certain territory pursuant to sections 362.26, 362.27 and 362.28 of the 1946 Code of Iowa. Section 362.26 provides as follows:

"Platted territory adjoining any city or town may be annexed thereto and become a part thereof by proceeding as follows:

"1. The council of the city or town desiring to annex adjoining territory may so provide by resolution, therein describing the territory proposed to be annexed and directing the mayor to institute therefor a suit in equity against the owners of such property.

"2. The petition shall contain:

"*a*. A description of the entire property proposed to be annexed and of that portion thereof owned by each defendant.

"*b*. The facts constituting the desirability of such annexation.

"*c*. A plat of such territory showing its relation to the corporate limits.

"3. If the court finds in favor of the annexation of such territory or any part thereof, it shall enter a decree accordingly, and if not, the petition shall be dismissed. No costs shall be taxed against any defendant who fails to make defense."

Section 362.27 provides for notice by publication and posting of the filing of the petition. Section 362.28 provides for the annexation of unplatted territory, and the proceedings thereunder are identical with those under 362.26 by direct reference, with the exception that before the petition of annexation can be

filed the council must submit the proposition to annex to the voters and secure a majority vote favoring the annexation. This section also provides that proceedings to annex platted and unplatted territory may be taken care of in one action.

The election which was held November 2, 1948, was favorable to annexation and shortly thereafter the city employed an abstract company to prepare the necessary descriptions and a list of owners of the separately owned parcels in the area to be annexed. While this work was going on and in February 1949 litigation developed between a taxpayer and the city challenging the validity of the election. This litigation resulted in a decree on April 29, 1949, in favor of the city, which on appeal to this court was affirmed by opinion filed February 7, 1950 (Iowa-Illinois Gas & Elec. Co. v. City of Bettendorf, 241 Iowa 358, 41 N.W.2d 1).

While the appeal in the above case was pending the city on August 24, 1949, filed its petition for annexation and commenced publication of notices. In October 1949 certain landowners in the territory sought to be annexed appeared specially and moved to quash service of the original notice. Hearing was had on this motion on July 21, 1950, and on August 22, 1950, the court quashed the service of notice. There is an explanation for the delay in the hearing on the motion to quash service, but, as will presently appear, the delay is immaterial for the purpose of our opinion.

On October 4, 1950, before republication of notice in the annexation case, a petition was filed in the Scott County District Court by twenty-five electors in the territory described in the petition asking for the incorporation of said territory as the Town of Riverdale. The territory described in this petition embraced a portion of the area Bettendorf was seeking to annex and some other land. The incorporation proceedings culminated in a decree on December 27, 1950, declaring the Town of Riverdale duly incorporated. It is admitted the incorporation proceedings were in compliance with applicable statutes governing incorporation of towns.

On February 26, 1951, the mayor of Bettendorf, after proper authorization, commenced the present action in quo warranto

against the Town of Riverdale, its governing body and officers, alleging the incorporation of Riverdale was invalid and void because the city of Bettendorf had the prior right to proceed to the conclusion of its annexation proceedings.

The defendants answered denying the existence of Bettendorf's prior right, alleging section 362.26, upon which such prior right is predicated, is unconstitutional under the provisions of section 1, Article III, of the Iowa Constitution. The answer also alleged if the said statute were constitutional the prior right to annex would not come into existence until the suit in equity for annexation was instituted and no valid suit for annexation had been instituted at the time of Riverdale's proceedings to incorporate, also if the prior right of Bettendorf to annex had ever existed the same was lost through unjustified delay on the part of the city of Bettendorf in furthering its annexation proceedings.

Trial was had upon the issues joined and the trial court found and concluded section 362.26 was not unconstitutional, the city of Bettendorf had the prior right to annex from the date of the adoption of the annexation resolution, and this prior right was not lost by any delay in the annexation proceedings. Upon these findings and conclusions judgment and decree was entered holding the incorporation of the Town of Riverdale null and void and ousting the individual defendants from their purported offices. The defendants appeal, presenting the same three issues raised in their answer.

I. Since all of the rights of the city of Bettendorf are based upon section 362.26 of the 1946 Code of Iowa, previously quoted, it becomes necessary to consider first the constitutionality of that section. Article III of the Iowa Constitution providing for the Distribution of Powers states:

"Departments of government. Section 1. The powers of the government of Iowa shall be divided into three separate departments—the Legislative, the Executive, and the Judicial: and no person charged with the exercise of powers properly belonging to one of these departments shall exercise any function appertaining to either of the others, except in cases hereinafter expressly directed or permitted."

The incorporation of a municipality is purely a legislative function. The power to create municipalities cannot be delegated to the judicial branch of government. The power to extend the boundaries of a municipality is an exercise of the power to create a municipality and is within the exclusive power of the legislative branch of government.

A few quotations will serve to show the above principles are firmly established. Wiseman v. Calvert, 134 W. Va. 303, 316, 59 S.E.2d 445, 452, holds: "* * * the incorporation of a municipality is purely a legislative function."

Wertz v. City of Ottumwa, 201 Iowa 947, 950, 951, 208 N.W. 511, 513, holds: "* * * the power to create municipalities rests wholly with the legislature. * * * The legislature had power to provide by law how municipalities shall be incorporated, and also how their boundaries may be extended."

In Denny v. Des Moines County, 143 Iowa 466, 477, 121 N.W. 1066, 1070, we quoted with approval this language from an early Michigan case, Houseman v. Circuit Judge, 58 Mich. 364, 25 N.W. 369:

" 'The design of the constitution is that each of the three branches of the government shall be kept, so far as practicable, separate, and that one of the departments shall not exercise the powers confided by that instrument to either of the others. Any legislation, therefore, authorizing an invasion of this design, and conferring upon the judiciary the exercise of powers belonging to either of the others, cannot be regarded as valid.' "

The general rule which the note writer in 69 A. L. R. 266 at 267 draws from the authorities is this: "It may be stated as a general rule, supported by practically all of the cases in which the proposition is considered, that the creation, enlargement, or diminution of political districts or municipal corporations is a legislative function * * *."

Appellees state in their brief that they "do not dispute that the power to establish a municipality and to alter municipal boundaries is a political function which rests solely in the legislative branch of the government." The question then is whether this annexation statute delegates a legislative function to the

court. If it does it is unconstitutional under the constitutional provision quoted above.

■ II. The prohibition against the delegation to the courts of power of creation, enlargement and diminution of municipalities does not mean that the legislature cannot provide for some court function in the proceedings. Perhaps it would be helpful to describe some methods of annexation and give the areas of agreement and controversy.

■ Apparently in most states there is a constitutional provision similar to our section 30, Article III, forbidding the incorporation of cities and towns (and this includes boundary changes) by local or special laws. There must be a general statute applicable to all who meet the conditions of the statute. Of course the first method of annexation would be to permit all municipalities to annex by ordinance. This method would probably be constitutional since a city council is a legislative body to which legislative functions can be delegated.

■ III. The next method of annexation was no doubt prompted by the fear of leaving such power of enlargement in the governing bodies of municipalities. Many of the legislatures by general statutes prescribed the conditions which must be met in order for the annexation to take place and required the courts to ascertain whether these conditions have been met and if they have to decree annexation. These statutes have all been held constitutional for the legislative function has not been delegated to the courts. The courts are merely required to perform the judicial function of determining whether the law has been complied with.

The rule announced in 16 C. J. S., Constitutional Law, section 139(2), is as follows: "The legislature may not delegate to the courts the power to determine the conditions on which certain territory shall be included within, added to, or detached from, municipalities and other governmental subdivisions; but the courts may be authorized to determine questions of fact, such as the question whether the law has been complied with."

See also Punke v. Village of Elliott, 364 Ill. 604, 5 N.E.2d 389; Hunter v. City of Tracy, 104 Minn. 378, 116 N.W. 922; Wiseman v. Calvert, 134 W. Va. 303, 59 S.E.2d 445; 69 A. L. R., annotation 266.

430

In Denny v. Des Moines County, 143 Iowa 466, 472, 121 N.W. 1066, 1069, we said: "It is well settled in this state that the Legislature may provide for the exercise by a court of the power to judicially determine facts which are made the conditions on which authority may be exercised by officers to whom is delegated the exercise of legislative and executive power."

IV. A third type of annexation is where the statute prescribes a few proper conditions which the court must find have been met, such as population facts, and character and description of the territory, and then authorizes the court "in its discretion" to decree annexation or to so decree if the annexation "ought to be granted" or to so decree if "it shall be to the public interest" or to so decree if the area "ought justly to be included in the municipality" or in general to decree "as justice may require." These are the statutes that have been attacked as unconstitutional on the ground that they delegate legislative power to the courts.

In the case of In re Brenke, 105 Minn. 84, 87, 117 N.W. 157, 158, proceedings were had for the detachment of agricultural lands from a municipality under a statute providing for court trial and further providing the court may "in its discretion" grant or refuse the same. In holding this statute unconstitutional "beyond doubt" the opinion states:

"That this is a delegation of legislative power and discretion to the court is quite clear. The organization of municipalities, including the extent of territory to be embraced within their limits, is exclusively legislative, and cannot be referred for a determination to the courts. * * *

"Had the act defined the conditions upon which land might be detached, directing the court, upon finding the necessary facts, to grant the relief, a different situation would be presented."

In the case of Udall v. Severn, 52 Ariz. 65, 68, 79 P.2d 347, 348, the court held:

"The power to create and to destroy municipal corporations, and to enlarge or diminish their boundaries is universally held to be solely and exclusively the exercise of legislative power. We do not know of any well-considered cases which hold to the contrary. [Citing cases.] When, therefore, the question before the

court is whether or not a statute which confers upon the courts the final power to determine whether land should be annexed to an existing municipal corporation is constitutional, and the only limitation upon the exercise of that power is that the court shall determine the issue without any standard or rule to guide it but its own view as to the political and economic expediency of the annexation, it would seem axiomatic that the power so to be exercised by the court was legislative in its nature, rather than judicial."

In Glaspell v. City of Jamestown, 11 N. D. 86, 88, 89, 88 N.W. 1023, 1024, 1025, the severance statute involved provided that the court should, after finding certain facts, grant severance, " 'If upon the hearing the court shall find that the request of the petitioners ought to be granted and can be so granted without injustice to the inhabitants or persons interested * * * [and] * * * if the court shall find against the petitioners the petition shall be dismissed.' " In holding this statute unconstitutional the court said:

"Having made such findings [as to character, location and occupancy of the land, etc.], the duty of the court, as prescribed by the law, is not fully performed in relation to the matter. The court must proceed further, and determine whether the petition 'ought to be granted and can be granted without injustice' to .the interested parties. It is apparent that such a determination goes further than the mere finding of a fact. It involves the reaching of a conclusion from the facts found as to the policy of restricting the corporate limits of the city—not only the policy for the present but for the future. It determines the limits of the city; the jurisdictional limits of its courts, and taxation powers; the effect upon its schools and people; and, in short, determines the same identical questions of public policy involved always in the exercise of legislative duties or powers."

In the case of In re Ruland, 120 Kan. 42, 43, 51, 242 P. 456, 457, 461, the annexation statute provided for a court action where the court would hear testimony as to the " 'advisability of making such addition' " and if the court " 'shall be satisfied that the

adding of such territory to the city will be to its interest and will cause no manifest injury' " to persons owning property in the area sought to be annexed he shall order the annexation. In holding this statute unconstitutional the court said:

"By this statute the court is asked 'to hear testimony as to the advisability of making such addition.' Naturally such testimony, having no specific fact to which it is required to relate, would vary with various witnesses, depending upon their respective ideas as to government, statecraft, politics, religion, education and social and financial matters, and might be influenced by personal or selfish motives. The statute further provides, if the court 'shall be satisfied that the adding of such territory to the city will be to its interest and will cause no manifest injury to the persons owning real estate in the territory sought to be so added,' an order shall be made, etc. Obviously, no force is added by stating this in the affirmative as to the city and in the negative as to the property owner, for in determining whether the proposed action is to the interest of the city the court must consider whether such action would be to its detriment; and in determining whether such action will cause no manifest injury to the owners of real estate the court must consider whether it is beneficial to them, and all this is included in the question whether the proposed action is advisable, which, as we have seen, is a purely legislative question."

In the case of State ex rel. Luley v. Simons, 32 Minn. 540, 542, 21 N.W. 750, 751, the statute for the incorporation of villages provided for a court hearing and if the court after such hearing was satisfied "that the lands embraced in such petition, or any part thereof, ought to be included in said proposed village, and that the interests of the inhabitants will be promoted thereby" it shall make the order declaring the village and setting the boundaries "as justice may require." In holding this statute unconstitutional the court said:

"It will be observed that under the provisions of this act the legislature has not, except as to certain preliminaries, determined or defined the facts or things upon the existence of which the territory shall be incorporated as a village. It will also

be observed that the duty of the court is not simply to inquire and ascertain whether certain specified facts exist, or whether certain specified conditions have been complied with, but to proceed and determine whether the interests of the inhabitants will be promoted by the incorporation of the village, and, if so, what land ought in justice to be included within its limits. In short, it is left to the court to decide whether public interests will be subserved by creating a municipal corporation, and the determination of this question is left wholly to his views of expediency and public policy. That the determination of such questions involves the exercise of purely and exclusively legislative power seems to us too clear to admit of argument. The granting of all charters of incorporation involves the exercise of legislative functions."

In the case of In re Village of North Milwaukee, 93 Wis. 616, 619, 626, 67 N.W. 1033, 1034, 1037, the statute authorizing a town corporation provided for a court determination as to whether the court was satisfied the lands embraced in the petition or any part thereof " 'ought justly to be included in the proposed village; that the interest of the inhabitants will be promoted', etc." In holding this statute unconstitutional the court held:

"The principles we hold in this case are simple: (1) The creation of municipal corporations is the exercise of legislative power; (2) legislative power cannot be delegated save as authorized by the constitution itself; (3) the circuit court, under the constitution, is purely a judicial court, and is not authorized to receive or exercise legislative powers of any kind; (4) the act of determining, either tentatively or finally, whether it is for the best interest of the people that they should be incorporated into a village, and fixing the boundaries, is not the determination of a mere question of fact, but is the exercise of legislative discretion, and, if such power be delegated at all, it must be delegated to the proper bodies named in the constitution."

An early Illinois opinion, City of Galesburg v. Hawkinson, 75 Ill. 152, is frequently quoted in later opinions dealing with the problem here involved. See Glaspell v. City of Jamestown and Udall v. Severn, both supra. In the City of Galesburg case at page 158 it is said:

"The proposition, to our minds, may be reduced within a very small compass. The same power cannot be either legislative or judicial, as the legislature may incline to retain it, or surrender it to the judiciary. If the boundaries of municipal corporations can be altered and changed by the legislature, in its discretion, and the authorities are all that way, then it is impossible that the courts can be invested with such power."

Many more cases from other jurisdictions reaching the same conclusion could be cited. Many are collected and commented on in the note in 69 A. L. R. 266, where the note writer states, pages 267, 268:

"A majority of the cases would seem to favor the rule that a statute providing for the creation or change of a political district or municipal corporation, which grants to a court the exercise of any discretion as to whether the political subdivision should be created or changed, or requires of the court any other assistance than to determine whether the conditions precedent as declared in the statute have been complied with by the organizers of the district or corporation, or the district or corporation seeking a change, violates the constitutional limitation separating the powers of the government."

In Denny v. Des Moines County, 143 Iowa 466, 473, 121 N.W. 1066, 1069, a case involving legislative powers in a field other than annexation we reviewed the authorities and legal principles in "analogous" situations. In speaking of the creation and extensions of municipal corporations we observed:

"In other states statutes providing for proceedings in court with reference to a creation of a municipal corporation, or the extension of its limits, have frequently been considered by the courts, with the general conclusion, supported by the great weight of authority, that if the proceeding involves the determination of a legislative question, or the exercise of administrative powers, the statute is unconstitutional, and that such statutes can be upheld only where they leave to the courts the determination of questions of fact, as distinguished from the exercise of a general discretion involving the public interest.

Callen v. Junction City, 43 Kan. 627 (23 Pac. 652, 7 L. R. A. 736); State v. Simons, 32 Minn. 540 (21 N.W. 750); Forsyth v. City of Hammond, 71 Fed. 443 (18 C. C. A. 175)."

Analyzing the statute now before us we find it first provides that the city "desiring" to annex adjoining property may so provide by a resolution describing the territory proposed to be annexed and directing the mayor "to institute therefor a suit in equity against the owners of such property." In other words, the command to the mayor is to institute a suit *for annexation* against the owners of the property which the city has by resolution expressed a desire to annex. The next paragraph states what the mayor's petition in the equitable suit to annex shall contain. It must contain a description of the property owned by each defendant and *"the facts constituting the desirability of such annexation"* and "a plat of such territory showing its relation to the corporate limits." (Italics supplied.) In the absence of a faulty description or incorrect plat, the only issue that could be raised by the defendants would be on the question of "desirability." The last paragraph of the statute merely directs the court if he "finds in favor of the annexation [to] enter a decree accordingly" and if not to dismiss the petition. In short, this statute provides for a suit in equity for annexation, by the mayor of a city which has adopted a resolution expressing the city's desire for such annexation, and the court is to find for or against annexation and enter a decree accordingly. The statute seems to give the city no power to annex at all. It merely gives the city power to resolve to direct its mayor to petition the court to annex. If the court is to decide anything it decides the desirability of such proposed annexation—presumably from the viewpoint of the city although there is nothing in the statute that would prevent consideration of "desirability" from the landowners' viewpoint. It is not exactly clear that the court must base its finding for or against annexation upon any determination of issues in the suit. But this would leave the statute so flagrantly unconstitutional that we will assume the legislature intended the court to find for or against the "desirability" of the annexation and render decree accordingly.

 What is desirable is not a question of fact that can be judicially determined. It is a question of policy or public interest exercisable by the legislature alone. In this plan of annexation the legislature is not giving the court the permissible function of determining whether facts prerequisite to annexation have been established. It is endowing the court with the power to make the conditions precedent to annexation. The court might decide the city's ability to furnish fire protection alone would make annexation desirable. Or the court might decide annexation would not be desirable unless and until every proper municipal service can be extended into the territory annexed. No one knows what the legislature meant by its requirement of desirability. It probably meant the court was to decide what would best promote or be conducive to the public good. Plainly this is legislation. The legislature has been entrusted with the power to pass laws for the public good. It cannot delegate to the courts, as a condition to the law's taking effect, the choice of determining whether the law will have a salutary effect. Under this statute the court must say: it is desirable that the city limits be or not be extended. This is no true finding of fact. It gives the municipality power to extend if the court thinks best.

The question of "desirability" is not unlike the question of "necessity." It is well settled that there can be some delegation of legislative power in a circumscribed field to an administrative agency to be exercised in accordance with standards and limitations fixed by the legislature. Thus we held in the case of In re Appeal of Beasley Bros., 206 Iowa 229, 235, 220 N.W. 306, 309, that the board of railroad commissioners could determine the question of whether a bus service would promote "public convenience and necessity" but the statute permitting appeal to the courts would be interpreted as permitting no review of the question of convenience or necessity. In the cited case we said:

"This required determination, on its face, is not of existing facts and resultant and controverted rights and duties, which is a judicial function, but is of public convenience and necessity, requiring the formation and determination of future rights and duties, which is a legislative question. [Citing cases.] The power

to make such determination may not be conferred upon or assumed by a constitutional court."

We need not review all of our many cases where we have held the issue of convenience and necessity is not reviewable in the courts. In the recent case of Reter v. Davenport, R. I. & N. W. Ry. Co.; 243 Iowa 1112, 1123, 54 N.W.2d 863, 870, we said: "* * * we have consistently held the question of convenience and necessity is legislative, not judicial * * *."

Plaintiff relies strongly upon the case of City of Burlington v. Leebrick (1876), 43 Iowa 252. At the time of this decision the Iowa annexation statute provided for the filing of a petition in the circuit court of the county, alleging facts with respect to the property and ownership thereof. The statute then provided: "If the court find the allegations of the petition to be true, and that justice and equity require that said territory or any part thereof should be annexed to such corporation, a decree shall be entered accordingly * * *." Section 431, Code of 1873.

It is to be noted the statute confers some proper judicial functions before permitting the decree of annexation. The court has to find the allegations of the petition are true. As a matter of fact the decision in the Burlington case, where the constitutionality of this statute was challenged, seems to be based almost entirely on this portion of the statute. The opinion states at page 258 of 43 Iowa:

"It is claimed that no fact is submitted to the court upon which its decree is to be based; that in the very nature of things there can be no issue formed susceptible of proof, and that the thing contemplated to be done is the creation of a corporation, which is an act of sovereign legislation. In these positions we think appellees are in error. Section 431 provides that the territory to be annexed must be abutting and contiguous to the city, and it must have been laid out into lots or parcels containing two acres or less. The petition must describe the territory and allege these facts. Certainly these are issuable facts, and the section provides that issues may be joined and the cause tried in the ordinary manner. The determination of these issues is a judicial act. It pertains neither to the legislative nor to the executive departments of the government. The legislature has passed a

general statute declaring that territory to which certain condi-
tions belong may be annexed to an incorporated city. The right
to annex it depends upon the existence of the conditions."

The discretionary element contained in the phrase "justice
and equity" in the last part of the statute seems to have received
but little consideration. In the closing lines of the opinion
(page 259) it is stated that the practicable way of extending a
city "is to provide by general statute the conditions under which
contiguous territory may be attached to a city, and then au-
thorize some local tribunal to determine whether the conditions
exist, and whether, under all the circumstances, justice and
equity require that the territory should be annexed. The statute
submits these questions to the Circuit Court, and we have no
doubt that they are so far of a judicial character that they may
properly be vested in the judicial department of the State, under
our Constitution."

As stated, the real decision in the Burlington case seems to
rest on the discussion and holding with reference to the factual
conditions in the statute. In fact, the authority of the case seems
to have been limited by what Justice McClain said about it in
Denny v. Des Moines County (1909), 143 Iowa 466, 472, 121
N.W. 1066, 1069:

"Thus a statute has been upheld which authorized a pro-
ceeding in the circuit court, as it formerly existed, to determine
whether justice and equity required that certain described terri-
tory, or any portion thereof, should be annexed to a city or town;
but this statute was upheld, as against the constitutional objec-
tion founded upon the separation of the departments of govern-
ment, only upon the theory that the facts on which the court
was to determine the question were issuable facts, capable of
judicial determination. City of Burlington v. Leebrick, 43 Iowa
252."

The opinion (page 473) in the Denny case goes on to point
out that the county circuit court in the Burlington case "vested
by statute with this authority was not a constitutional court, but
one whose functions were purely statutory; and it is well settled
that such a court may be given legislative or administrative, as

well as judicial, functions." But this point was not discussed in the Burlington case and the decision is not based on the fact that the circuit court was not a constitutional court.

Both of the foregoing Iowa opinions are cited and commented upon in the case of Udall v. Severn, 52 Ariz. 65, 79, 79 P.2d 347, 353. The Burlington opinion is criticized for ignoring "any discussion of the question of why the leaving of the ultimate question of 'justice and equity' to the unfettered discretion of the court is not legislative, and [for] merely arbitrarily stating in the conclusion of its opinion that it is not." A portion of the opinion in the Denny case is then quoted as opposed to the doctrine of the Burlington case.

Prior to the statements about the Burlington case in the Denny case, the Burlington case was criticized in In re Village of Ridgefield Park (1892), 54 N. J. L. 288, 292, 23 A. 674, 675. There the Supreme Court of New Jersey held unconstitutional a rather long municipal incorporation statute authorizing the court to determine whether the proposed boundaries are such "as will be most advantageous and consistent with the public interests, etc." In the course of the opinion Justice Dixon of the New Jersey Supreme Court stated:

"The only case which I have found where the question turned upon the principle now involved, and the decision was opposed to the foregoing citations, is City of Burlington v. Leebrick, 43 Iowa 252, in which the power of a circuit court to determine whether justice and equity required that certain territory should be annexed to a city was sustained. No reasons are assigned, the court being content to say: 'We have no doubt that the questions are so far of a judicial character that they may properly be vested in the judicial department of the state.' This scarcely countervails the weight of contrary decisions, reached after doubt had given rise to discussion and deliberation."

Though the Burlington case was not expressly overruled, it would seem that its authority was somewhat limited by our statements in the Denny case. In any event, the arbitrary holding that the determination of the requirements of justice and equity would not be legislative is against the clear weight of authority

and the holding is overruled. While there have been no recent cases in this state involving the constitutionality of statutes providing for the extension of municipal boundaries, recent cases in other fields have adhered closely to the general rule well expressed in the Denny case at page 473 of 143 Iowa: "* * * such statutes can be upheld only where they leave to the courts the determination of questions of fact, as distinguished from the exercise of a general discretion involving the public interest."

Plaintiff cites City of Wahoo v. Dickinson, 23 Neb. 426, 428, 36 N.W. 813, 814, where the statute required the court to find a number of facts and then provided the decree of annexation should be made if the court should find the proposed territory "would receive material benefit by its annexation * * * or that justice and equity require * * *." The statute was upheld, largely on the authority of our Burlington case which is cited and discussed.

In the case of Incorporated Village of Fairview v. Giffee, 73 Ohio St. 183, 187, 191, 76 N.E. 865, 866, 867, the court upheld a severance statute providing for a decree of severance if the court should find the area could be detached " 'without materially affecting the good government of the adjacent territory within such city or village limits' * * *." The statute was upheld but the opinion notes "the absence of a distributive clause in the Constitution of Ohio, although such a clause appears in the Constitution of most of the states."

In Henrico County v. City of Richmond, 106 Va. 282, 55 S.E. 683, 117 Am. St. Rep. 1001, cited by plaintiff, the statute conferred upon the court, after finding certain facts, the power to ascertain and determine the necessity for, or the expediency of, extending the corporate limits of cities and towns. The majority seemed to recognize this conferred some legislative power on the courts but the opinion points out some legislative power can, under the prior decisions of Virginia, be delegated to courts —even the power of the courts to levy taxes had been upheld.

Much the same situation exists in Utah. Plaintiff cites Young v. Salt Lake City, 24 Utah 321, 67 P. 1066, but a later Utah case, Plutus Mining Co. v. Orme, 76 Utah 286, 294, 289 P. 132, 135, states:

"While some courts of high standing have held that the Legislature may not delegate its authority to restrict the corporate limits of a city to the judiciary, the contrary view has become the established law in this jurisdiction. Young et al. v. Salt Lake City, 24 Utah 321, 67 P. 1066."

In Forsythe v. City of Hammond, 142 Ind. 505, 40 N.E. 267, 41 N.E. 950, 30 L. R. A. 576, the statute gave the annexation power, including apparently some discretion, to a county board and it was held on the appeal to the courts the board's action could be reviewed. The Circuit Court of Appeals, Seventh Circuit, in Forsythe v. City of Hammond, 71 F. 443, 452, 455, reviewed the Indiana statute and held: "It is therefore necessarily a legislative discretion, over which, consistently with the constitutional distribution of powers, the courts could not be given and cannot assume control."

The circuit court refused to follow the decision of the Indiana Supreme Court stating: "The decision of the state court which we are asked to follow seems to us to be in plain conflict with the weight and general current of authority on the subject."

Even in the cases holding to the minority view the required court determination is usually that the annexation or severance would be equitable or it would not be inequitable. No case is cited that goes so far as to allow annexation if the court felt it "desirable." Such a requirement as a determination of desirability leaves the court free to first formulate all of the conditions precedent to annexation and then find if they exist. This is a delegation of unlimited power in the courts to determine whether property shall be annexed or not and hence the statute is unconstitutional.

We may say in passing that the statutes that are here in issue, sections 362.26 and 362.28, Code, 1946, have been repealed by section 7, chapter 144, Acts of the Fifty-fourth General Assembly. As stated at the outset, defendants assert other propositions which they argue entitle them to a reversal. The proposition we have considered disposes of the case. Further discussion of the other propositions is not necessary.

Section 362.26, Code, 1946, is unconstitutional in that it confers legislative power upon the court. This means that section

442

362.28, which incorporates the procedure of section 362.26, is also unconstitutional for the same reason. The cause is reversed for judgment dismissing plaintiff's petition.—Reversed.

All JUSTICES concur except LARSON, J., not sitting.