171 So.2d 161 (1965)
CITY OF AUBURNDALE, a municipal corporation, et al., Appellants,
v.
ADAMS PACKING ASSOCIATION, Inc., et al., Appellees.
No. 33244.
Supreme Court of Florida.
January 20, 1965.
Stanley & Woods, Auburndale, and Esteva & Chumbley, St. Petersburg, for appellants.
Martin & Martin, Lakeland, for appellees.
*162 O'CONNELL, Justice.
Acting under the authority of F.S. Section 171.04, F.S.A., the City of Auburndale passed an ordinance declaring the City's intention to annex certain lands, including property owned by the appellee, Adams Packing Association, Inc.
The appellee and other land owners, as authorized by the statute, filed in the circuit court a petition objecting to the annexation, and at the same time filed suit for injunction and declaratory decree, asking among other things that Section 171.04 be declared unconstitutional.
On motions for summary judgment filed by both parties, the chancellor entered a partial summary decree in the suit for injunctive and declaratory relief. In this decree, the statute was held to be unconstitutional on the ground that it constituted an unlawful delegation of legislative power to the judiciary. The decree also decided other questions, but because we agree that the statute is unconstitutional, it is unnecessary to discuss these other questions.
Section 171.04 is a general law authorizing a municipality to enlarge its boundaries by annexation of contiguous, unincorporated areas of land lying in the same county.
The statute provides that, if the area desired to be annexed contains less than ten registered voters, the municipality may pass an ordinance declaring its intention to annex the area within thirty days from the approval of the ordinance by the city. The statute further provides that, if any ten registered electors of the city or any two owners of property in area to be annexed wish to do so, they may, within the thirty day period, object to the annexation by setting forth the grounds for their opposition in a petition filed in the circuit court of the county in which the municipality is situated. Either party may request a jury trial of the objections.
If no objections are filed within the thirty day period, or if the court does not sustain the objections, the lands are annexed. If the court sustains the objections, the lands are not annexed.
The statute contains a different procedure for annexation of areas containing ten or more registered voters, but we are not directly concerned with this procedure, since the area in question had less than ten registered voters.
The rationale of the chancellor's decision is that Section 171.04 fails to establish any criteria by which the court is to determine whether objections to the annexation ought or ought not be sustained.
Despite the fact the legislative history of Section 171.04 reveals that the provision for judicial review of annexation proceedings has been a part of the act since 1879 (See Section 2(2) of Chapter 3163, Laws of Florida, 1879), the briefs before us, and our independent research, fail to reveal any previous attack on its constitutionality. The question, however, has been raised and decided in a number of jurisdictions across the nation. Accordingly, we can look to them for guidance.
At the outset, it will be helpful to note some basic rules. In the discussion of selected cases found in the Annotation in 69 A.L.R. 266, the following rule is stated:
"It may be stated as a general rule, supported by practically all of the cases in which the proposition is considered, that the creation, enlargement, or diminution of political districts or municipalities is a legislative function." At 267.
Looking to Florida law, we find that Article VIII, Section 8, Florida Constitution, F.S.A., gives the legislature the sole power over the creation and abolishment of municipalities in the following words:
"The Legislature shall have power to establish, and to abolish, municipalities to provide for their government, to *163 prescribe their jurisdiction and powers, and to alter or amend the same at any time. * * *"
This express authority to create and to abolish municipalities given the legislature by our state constitution necessarily implies the power to extend the boundaries of an existing municipality. State ex rel. Johnson v. City of Sarasota, 1926, 92 Fla. 563, 109 So. 473; MacGuyer v. City of Tampa, 1925, 89 Fla. 138, 103 So. 418. As an incidental power to the power to create and abolish, annexation is therefore also within the exclusive power of the legislative branch of government. State ex rel. Davis v. Stuart, 1929, 97 Fla. 69, 120 So. 335, 64 A.L.R. 1307.
Annexation, being exclusively a legislative function, cannot, in accordance with the concept of divided powers expressed in Article II, Florida Constitution, be delegated to, or exercised by, a non-legislative body such as the judiciary. Therefore the question for decision is whether Section 171.04 delegates a legislative function to the judicial branch of our state government, or invites the judicial branch to exercise a legislative function.
A statute that leaves to the discretion of a court the determination of the conditions or circumstances on which the change of municipal boundaries will be permitted, as distinguished from one which charges a court with the judicial function of determining whether conditions or circumstances prescribed by the legislature have been met or performed, violates the constitutional provision separating the powers of government into the traditional three branches. 16 C.J.S. Constitutional Law § 139(2); Udall v. Severn, 1938, 52 Ariz. 65, 79 P.2d 347; State ex rel. Klise v. Town of Riverdale, 1953, 244 Iowa 423, 57 N.W.2d 63; In re Ruland, 1926, 120 Kan. 42, 242 P. 456; 2 McQuillin, Municipal Corp. 3 ed. § 712. See also Annotation 69 A.L.R. 266.
There can be little disagreement with this general principle, and almost all decisions support it. With respect, however, to the underlying issue of what constitutes an exercise of legislative discretion or power by the judiciary, the authorities are in conflict.
Our study of the cases and statements of authorities on this question indicates that, for our purposes, annexation statutes may be divided into two broad categories: (a) those that authorize petitions requesting annexation to be filed before a court with the court determining whether the petition should be granted and annexation decreed, and (b) those that authorize the municipality to annex by ordinance or resolution subject to approval or rejection by a court. In this second category, some statutes require court action only if objections are made to the annexation, as in the Section 171.04, while others require court approval in any event.
The courts have usually struck down statutes falling in category (a) unless the statute set out specific conditions precedent to annexation leaving the court only the duty of determining whether the prescribed conditions have been met. The view of most courts is well stated in City of Galesburg v. Hawkinson, 1874, 75 Ill. 152. As explained in that case, the judicial function must be limited to determining what the legislature has prescribed to be done, i.e., what is the law, and whether it has been violated or obeyed; not what the law shall be. This means, in context of an annexation statute, that the courts may not be given the authority to decide what facts shall exist in order that annexation may occur for this is a legislative function.
As stated earlier, we have found no Florida cases directly in point. There are, however, several cases involving the formation of drainage districts that are worthy of note under the first category of cases mentioned above.
Chapter 6458, Laws of Florida, 1913 (Section 1098, Rev.Gen.Statutes, 1920) authorized the creation of a drainage district *164 by order of a circuit court acting on a petition signed by a majority, either in numbers or acreage, of the holders of any contiguous body of wet or overflowed lands. Any landowners in the affected area who had not joined in the petition could file objections to the formation of the district. The court was required to hear the objections and "* * * if the court shall be of the opinion that the establishment of the said drainage district and the improvements to be made thereunder will be for the advantage of the owners of the real property therein or that the same would be in the interest of the public health, convenience or welfare, he shall overrule said objections." If no objections were filed the court was required to decree the formation of the district.
In Burnett v. Greene, 1929, 97 Fla. 1007, 122 So. 570, 69 A.L.R. 244, in an opinion by Justice Ellis, and concurred in by one other justice, the above statute was held to be invalid as an unconstitutional delegation of legislative power. Because a majority did not concur in the opinion (a majority agreed only to the judgment), the opinion was apparently not considered as a decision on the validity of the act for the statute was upheld in McMullen v. Newmar Corp., 1930, 100 Fla. 566, 129 So. 870, and again in Burnett v. Greene, 1931, 105 Fla. 35, 144 So. 205, on authority of the McMullen decision.
In the McMullen case, this court recognized the general rule prohibiting the delegation of legislative power to the courts. It held that under the facts of the case the legislature had prescribed sufficient conditions and the court was merely called upon to determine their existence. It is clear from a reading of the opinion that, had the court not concluded that the legislature had adequately prescribed the conditions to be determined by the court, the statute would have been held unconstitutional. We mention this case only because of this point, for we think that at least by inference it supports our conclusion regarding the validity of Section 171.04 in which the legislature did not adequately prescribe the conditions to be determined by the court as the basis of its decision to uphold or reject the objections to annexation.
We note, parenthetically, that this court in the McMullen case specifically held that the provision of the statute requiring the court to base its decision for or against the formation of the drainage district on whether in its opinion the formation thereof would be "for the advantage" of the landowners, or be "in the interest of the public health, convenience or welfare" did not violate Article II, Florida Constitution. This court has recently held invalid as an unconstitutional delegation of legislative power, a provision in a statute that gave the Railroad and Public Utilities Commission the power to alter or restrict licenses on a determination by the Commission that "the public interest may be best served thereby." Nevertheless, the drainage district statute is not before us and nothing said herein may be taken as reflecting on its validity.
The second category of cases, i.e., those involving the validity of statutes that permit the filing of appeals or remonstrances to courts from annexation ordinances or resolutions, includes F.S. Section 171.04, F.S.A.
In each case in which statutes of this kind have been upheld, the court has recognized the general rule prohibiting the exercise of the legislative power of annexation by the courts, but has found that the statute in question adequately prescribed conditions to be found by the court in the exercise of a judicial function. Ritchie v. City of Brookhaven, 1953, 217 Miss. 860, 65 So.2d 436; Witt v. McCanless, 1956, 200 Tenn. 360, 292 S.W.2d 392, and City of St. Joseph v. Hankinson, (Mo. 1958), 312 S.W.2d 4.
In the City of St. Joseph case, which incidentally is a hybrid which might be treated under either of the two categories above mentioned, the statute required the city to *165 first adopt an annexation ordinance and then petition the court for approval in a declaratory decree proceeding. The statute did not prescribe conditions to be determined by a city as a basis for annexation, but it did require that in its petition to the court the city allege the need of the city for the area to be annexed and its ability to furnish municipal services to the area.
In interpreting and upholding the statute, the Missouri court noted that the courts, for many years, had reviewed the validity of annexation proceedings after they were consummated, by suits for injunction or by quo warranto. It reasoned that in such proceedings the court did not substitute its judgment or discretion for that of the legislative body or review its legislative discretion, but only determined whether the "reasonableness" of the annexation was debatable. If it was found to be debatable, the discretion of the city was conclusive. Thus, that court felt that the statute made no change in the power of the court as exercised in quo warranto or injunction, but involved only a procedural change allowing the exercise of the power before, rather than after annexation.
We have considered the rationale of the Missouri court in City of St. Joseph in an effort to uphold the validity of Section 171.04. We cannot say that the Missouri statute did not justify the interpretation that the review by the court was to be in the nature of quo warranto and governed by the principles applicable thereto. But even if we were inclined to follow that view, our statute differs from the Missouri statute, in that Section 171.04 does not require the city to find or determine the need of the area for expansion or its ability to furnish municipal services to the area. Nor are the objectors required to present to the court issues predetermined by the legislature as being necessary to be decided by the court.
Section 171.04 gives a municipality the right to annex by ordinance any area containing less than ten registered voters subject only to the condition that the lands be contiguous to and in the same county as the city. The objectors in their petition for review are not required to assert any specific issues for decision by the court, nor is the court required to base its decision on the presence or absence of any conditions predetermined by the legislature. Moreover, while we do not intend to imply that such is necessary to the exercise of the power to annex by a legislative body, the statute in this instance does not require the city to make any finding as to the need of the area for expansion, the urban character of the lands, the need of the area for or the ability of the city to furnish municipal services thereto. Therefore, it is impossible to save the statute by interpreting it to limit the court to determining the actual existence of any such conditions because none are prescribed as condition precedents to municipal action.
The authorities and cases that hold as we do are many. We think it necessary only to cite the case of State ex rel. Klise v. Town of Riverdale, 1953, 244 Iowa 423, 57 N.W.2d 63, which contains a thorough study of the question before us and reviews many decisions of other states.
This last cited case artfully concludes that statutes that leave to courts the determination of whether annexation is "desirable," "necessary," "advisable," "in the best interest" of the inhabitants of the city or annexed area, or ought in "justice and equity" be allowed, are all unconstitutional because they leave to the judiciary the exercise of a legislative power, to-wit: the determination of the conditions on which annexation should take place.
Section 171.04 does not go even so far as to limit the court's action to determining what is "desirable," "necessary," etc. The statute is subject to the fatal criticism, found somewhere in our research, that it appears "on its face to be a blanket invitation for the judicial branch of government to consider all the economic, political, and social aspects of municipal expansion." *166 The court is left free to determine what the policy governing annexation shall be, not whether the legislative policy is met, which is, and ought to be, the constitutional limit of judicial authority in such cases.
Under Section 171.04, when objections to annexation are filed as they were here, the circuit court has the unlimited power, governed by nothing more than its own unbridled discretion, to decree that annexation shall or shall not take place. Thus the court is given the power to determine under what conditions annexation ought to take place  a legislative power and function  and the power then to decide whether the self-determined conditions have been met or shown to exist.
The statute, in effect, gives the court the power to substitute its will as to the advisability of annexation for that of the municipality's legislative body. The fact that the annexation is initiated by the legislative body of the municipality does not save the statute, for it provides that upon filing of objections all action by the municipality is stayed pending decision of the court on the objections. Annexation is not accomplished with the passage of the ordinance. The final power is given to the court in all instances where objections are filed, and this power under this statute is unrestricted. As such, it must be held to be an exercise of the legislative power, which under the constitution of our state cannot be delegated to the judiciary.
In the effort to uphold the validity of the statute, we have considered construing the statute to limit the court on review to a determination only of whether: (1) the annexation ordinance was passed in compliance with applicable procedural requirements; (2) the area involved is contiguous to and in the same county as the city; and (3) the area contains less than ten registered electors. If this had been the legislative intent there would have been no reason whatsoever for providing for trial by jury of the objections. The legislature quite obviously intended that something more be determined on the review of the objections. There is no basis for our construing it in this fashion.
The chancellor was of the view that the provision for judicial review was such an integral part of the statute that striking it and leaving the remainder of the statute standing would defeat the legislative purpose, which seems to have been to afford some safeguard to landowners against arbitrary and unwarranted annexation of lands by municipalities. We agree, with the exception that the provision under which annexation of area containing ten or more electors may be accomplished subject to referendum and without court review can be allowed to remain undisturbed.
What we have said and hold in this case does not mean that the legislature cannot provide for some court function in annexation proceedings by municipalities. Nor does it mean that it may not require court review of objections to annexation as attempted in Section 171.04. All it means is that if the courts are to be used, the legislature must clearly spell out the conditions or factual issues that are to be determined by the court, thereby restricting the court to performance of a judicial function.
For the reasons above stated, so much of the decree appealed from that is consistent with and discussed in this opinion is affirmed.
DREW, C.J., and ROBERTS, CALDWELL and ERVIN, JJ., concur.
THOMAS and THORNAL, JJ., dissent.